[Civ. No. 12377.   Second Dist., Div. One.—June 5, 1941.]

NATIONAL HOLDING COMPANY (a Corporation) et al., Appellants, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation), Respondent.

Loewenthal & Elias for Appellants.

Arch H. Vernon, Earl E. Johnson and Gilbert E. Harris for Respondent.

DORAN, J.—Plaintiffs appeal from a judgment in favor of respondent after the sustaining of a general demurrer to plaintiffs' complaint as amended, without leave to amend further.

The action is one brought upon a policy of title insurance to recover a sum of money expended by appellants in the extinguishment of a certain tax lien. Upon this appeal from a judgment after demurrer the truth of the facts as alleged in the complaint must be presumed, and the sole question presented is whether those facts as stated constitute a cause of action against respondent as defendant.

The complaint as amended alleges that one Frank A. Bouelle is the owner of a certain piece of real property, subject to a leasehold for a term of ninety-nine years, which said leasehold has been acquired by appellant National Holding Company at a sale of the lessee's interest under foreclosure; and that the said appellant has agreed to be bound by the lessee's covenants and agreements. That by the terms of the lease, the lessee was required to pay all taxes imposed on the property in question and all such payments were to be made in the name of the lessor. That the said appellant acquired

the leasehold on or about January 24, 1936; and that prior to that date the county assessor assessed the said property for general city and county tax purposes for the fiscal year 1935–1936, and the county levied a tax for such purposes upon the property in the sum of $14,282.40. That the first installment of said taxes, in the sum of $7,141.20, was paid by appellant's predecessor in interest on or about December 5, 1935, and that said payment was made "under a valid and proper written protest contesting and protesting the validity of said entire assessment and of said entire tax"; and that on the date the said appellant acquired the leasehold the official records of the county assessor's office and the tax collector's office showed that the 1935–1936 taxes upon the property had been paid under protest. That on the date the said appellant acquired the said leasehold, to wit: January 24, 1936, appellant National Holding Company became indebted to appellant Bank of America, and to secure that indebtedness the National Holding Company executed a deed of trust covering its interest in the property in question. That on or about January 25, 1936, respondent issued its policy of title insurance covering the said leasehold interest. That on or about April 13, 1936, Frank A. Bouelle and appellants' predecessor in interest commenced an action for the recovery of the taxes paid under protest. That on or about April 17, 1936, appellant National Holding Company paid the second installment of the taxes in question. That on or about June 30, 1936, the said Bouelle and appellants' predecessor recovered judgment against the county for the full amount of the taxes for 1935–1936, being the sum of $14,282.40, with costs, and the taxes so assessed were set aside and declared void in their entirety. That appellants were not parties to the action to recover the said taxes. That thereafter and on or about July 7, 1938, the county assessor caused a reassessment of the said property to be made on the 1935–1936 tax rolls and fixed the tax upon the property at the sum of $13,-698.07, all pursuant to the provisions of sections 3681a and 3649 of the Political Code; and the county contended that the reassessment was a valid assessment for the taxable year 1935–1936 and constituted a valid and sufficient tax lien which related back to the time of the entry of the original assessment. "That on or about November 26, 1938, plaintiffs (appellants) caused to be served upon defendant (respond-

ent) a request for defendant's approval of a proposed compromise of the controversy with the County of Los Angeles over said reassessment", a copy of the request being attached to the complaint; and thereafter defendant gave its written approval of the proposed compromise. The approval, also attached as an exhibit, shows that it was made with the understanding that it did not constitute any admission of liability under the policy of title insurance in question. The compromise involved the payment of the sum of $6,000 in full settlement of the taxes assessed, as appears by the exhibits. The complaint prays judgment against respondent for $6,000, for attorneys' fees and costs.

The policy of title insurance is attached to the complaint as an exhibit, and insures appellants against loss or damage, not exceeding a specified sum, which the insured shall sustain "by reason of any defect in, or lien or encumbrance affecting said leasehold . . . other than defects, liens, encumbrances and other matters shown in Schedule B . . . all subject, however, to the exceptions and conditions hereto annexed, which exceptions and conditions together with Schedules A and B are hereby made a part of this Policy". The pertinent portions of Schedule B are as follows: " (I.) Defects, liens, encumbrances and other matters affecting the title to the land described in Schedule A, which are superior to the leasehold: 1. Second installment General and Special County and City taxes 1935–1936, Assessment 69858. Amount $7141.20." Among the exceptions in the policy is found the following provision: "The Company does not, by this Policy, insure against: (1.) Any facts which a correct survey and inspection of said land would show; water rights; mining claims; rights or claims of parties in possession of any part of said land, easements, liens or encumbrances which are not shown by the official records of (a) the County of Los Angeles; (b) the Federal Offices at Los Angeles; (c) any City in which, or adjacent to which, said land is located."

Appellants contend that the reassessment of the 1935–1936 taxes, which occurred after the title insurance policy was issued, was merely a step in the enforcement of a tax lien which had attached to the property prior to the date of the policy, and the policy of title insurance should therefore be construed so as to cover the extra tax burden which appellants were required to discharge by virtue of the reassess-

ment; and that appellants' complaint consequently stated a cause of action against respondent upon the policy for the extra taxes appellants were compelled to pay. Respondent, on the other hand, argues that the policy of title insurance insured only against taxes shown by the official records of the county at the date of the issuance of the policy, and that the reassessed taxes for 1935–1936, here sought to be recovered, were not a lien or encumbrance shown by the official records when the policy of insurance was issued.

Respondent concedes that real property taxes are a lien, and are included within the term "encumbrances" as used in the policy of title insurance sued upon, that the lien of such taxes attaches as of March 1st of the year for which it is levied, as provided by section 3718 of the Political Code, and that the subsequent fixing of the amount of the taxes, through levy and assessment is a step to enforce the already established lien. However, respondent contends that determination of the amount of the tax through such levy and assessment is a necessary step to show the lien of record, and, furthermore, that when the taxes were paid as originally assessed, the lien thereof was extinguished, notwithstanding the fact that the taxes were so paid under protest, and the subsequent reassessment created a new lien which did not arise until the reassessment was made.

As correctly pointed out by respondent, the policy did not insure against the lien of taxes set forth in Schedule B, namely, the second installment of the 1935–1936 taxes, whether such taxes were a matter of record or not; nor did the policy insure against any liens not shown by the official records of the county. Therefore, as may already be seen from the gist of the argument above set forth, the pivotal question here is: "Were the reassessed and relevied taxes for 1935–1936 a lien or encumbrance shown by the official records of Los Angeles County on January 25, 1936", the date of the issuance of the policy of title insurance?

The policy as drawn clearly protected appellants from the lien of the first installment of 1935–1936 taxes, as originally assessed, and which had been paid under protest at the time of the issuance of the policy. It should be borne in mind, however, that according to the allegations of the complaint the record showed that the payment had been made under

protest. Accepting such allegation as true, as this court is required to do under the circumstances, it thus appears that respondent was put upon notice at the time it issued its policy that the payment of the taxes was at best contingent and subject to a later proceeding to recover the taxes paid, which, if successful, would necessarily result in a subsequent reassessment and levy against the property, occurring after the insured had taken title thereto and at a time when the insured would necessarily be liable to pay any taxes thereon. Under the circumstances, if respondent had intended to avoid liability in the event of such a reassessment sound reason and justice should require respondent to have expressed this limitation in plain and unambiguous terms in the policy.

In an analogous case recently decided by this court, it was held that the title insurance company would not be permitted to avoid liability under a similar ''Exceptions'' clause. In *The Coast Mutual Building-Loan Assn.* v. *Security Title Ins. & Guar. Co.*, 14 Cal. App. (2d) 225 [57 Pac. (2d) 1392], the insurance company excepted liability for ''Rights or claims of parties in possession, or based upon overlapping improvements, or upon adverse possession of all or any portion of said property, which rights or claims are not shown by said public records.'' The interest of the insured in the property was defeated by the claim of one Katherine Mintener who had record title to the property and was in possession thereof. There was, however, on the record a forged deed purporting to deed away the interest in the property involved of said Katherine Mintener. The insurance company contended that it was not liable to its insured for the claim of said Katherine Mintener because from an examination of the records it appeared that she no longer had any interest in the property. This court, however, held that the insurance company was liable and said at page 229:

''The entire case turns upon the construction to be placed upon said exception in the policy. Katherine Mintener's title was, and long had been, of record. Did it cease to be shown of record, within the meaning of the policy, upon the recording of a forged deed purporting to convey the title to another? In the decision of this question we are to be guided by well established rules relating to the construction of insurance policies. Not only the provisions of the policy as a whole, but also the exceptions to the liability of the insurer,

must be construed so as to give the insured the protection which he reasonably had a right to expect, and to that end doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor.

" 'The courts have also announced a rule . . . to the effect that when the language employed in an insurance contract is ambiguous, or when a doubt arises in respect to the application, exceptions to, or limitations of, liability thereunder, they should be interpreted most favorably to the insured, or to the beneficiary or mortgagee to whom the loss is payable as his interest may appear. Such contracts are to be interpreted in the light of the fact that they are drawn by the insurer, and are rarely understood by the insured, to whom every rational indulgence should be given, and in whose favor the policy should be liberally construed. Where the language and terms of a policy are framed and formulated by the insurer, every ambiguity and uncertainty therein should be resolved in favor of the insured.' (14 Cal. Jur., p. 445.)

"The rule thus stated is supported by an unbroken line of authorities, a few of which are the following: (authorities cited).

"What is meant by the phrase 'shown by said public records'? Under the construction urged by defendant, it means that when a forged deed is recorded which purports to convey away the title of the record owner, such title, or such rights and claims as the true owner may have, are no longer shown by the records. We cannot give it that construction. The rights and claims of Katherine Mintener were founded upon a complete record title. They existed and were shown of record after as well as before the recordation of the forged deed. Her title was clouded, it is true, but it was otherwise unaffected, and she had an absolute right, based upon her ownership, shown of record, to have the cloud removed. (Authorities cited.)"

It is not too difficult to draw an analogy between a forged deed and a payment of taxes under protest, insofar as the effect upon official records is concerned. In the case of the deed, as held in the decision just quoted at length, the previous record is not extinguished; and in the case of a tax payment under protest, it would seem that the record of the tax lien should not be extinguished thereby, particularly when, as here alleged, the protest is on record. As stated by

appellant, it would thus seem that the words "liens or encumbrances which are not shown by the official records of the County of Los Angeles" should not be construed so as to enable the respondent insurance company to avoid liability for a tax lien which was certainly "shown by the public records" prior to the time when the policy was issued.

Respondent has cited no authority which supports its contention that the payment of taxes under protest extinguishes the lien thereof. *Hayes* v. *County of Los Angeles,* 99 Cal. 74 [33 Pac. 766], was a case where property had been assessed twice, in error, for the same tax. It was there held that, where by accident, oversight, or mistake, the same property has been twice assessed, and the taxes twice collected, the moneys collected by mistake must be refunded. The payment of the taxes in that case was unconditional, and it is clear that an unconditional payment of a tax extinguishes the lien and the tax may not again be collected. Such a case is distinctly different from that in which there has been a tax refund and subsequent reassessment. *Jones* v. *Sturzenberg,* 59 Cal. App. 350 [210 Pac. 835], holds that a person seeking to redeem property sold for taxes is entitled to rely on the county auditor's estimate of the amount due, and where the auditor makes an error in his calculations it does not affect the redemption, notwithstanding the fact that the auditor may have overlooked an item. In other words, the county is bound by the mistake of its auditor and the property may be redeemed by payment of the amount mistakenly estimated. Neither of these cases cited by respondent has any bearing upon the question here involved.

It is appellants' contention that payment of taxes under protest does not serve to extinguish the underlying tax lien unless and until all steps in connection with such protest and payment have been finally taken and the county's right to retain the moneys paid has become final and absolute. The argument advanced by appellants in support of their contention is cogent and sound and merits quotation herein with approval, as follows:

" . . . the lien is imposed by the provisions of Political Code, section 3718, which provides that such liens attach as of the first Monday in March.

"The duration of such liens is covered by Political Code, section 3716, which provides that the lien is not removed

until the taxes are paid or the property sold for payment thereof.

"Various other provisions of the Political Code provide for the assessment of property and the levy and collection of taxes thereon as the usual and proper steps to be taken in the enforcement of the statutory lien.

"Political Code, section 3819, provides for the payment of taxes under protest when the taxpayer desires to challenge the validity or amount of any assessment. This section further provides for the maintenance of an action by the taxpayer on account of taxes paid under protest at any time within six months after payment. This section also provides that in the event the county is compelled to refund any taxes paid under protest, the county in such event can get back from the state any portion of such taxes which have been paid over into the state treasury.

"Political Code, section 3804a, provides for the cancellation of invalid or excessive tax assessments upon order of the Board of Supervisors with the consent of the District Attorney or other legal advisor of the board.

"Political Code, section 3681a, provides for reassessment, levy, equalization and collection in enforcement of the statutory tax lien where the original assessment, levy or collection of the tax has for any reason been adjudged invalid.

"An examination of these statutes seems to indicate a clear legislative intention to maintain the existence of the statutory real property tax lien until the same has been *finally* paid, or until the same has been foreclosed and the property acquired by the state for delinquent taxes. In fact, it is only by maintaining the existence of the underlying lien imposed by Political Code, section 3718, that the state can be assured of collecting its taxes. If the payment of a particular assessment under protest or the cancellation of a particular assessment by the Board of Supervisors or by the courts could operate to extinguish the lien imposed by Political Code, section 3718, then the state would be entirely without any remedy for the collection of taxes in such instances. Once the underlying lien is extinguished, the reassessment and the relevying of taxes under Political Code, section 3681a, would be idle acts because such reassessment and relevy would be merely an attempt to enforce a non-existent lien. The California Supreme Court has in fact held that an assessment

cannot legally be made where no valid statutory lien had attached to the property in question on the first Monday in March. *East Bay Municipal Utility District* v. *Garrison,* 191 Cal. 680 [218 Pac. 43].

''We must remember in considering this question that there is no personal liability on the owner of real estate with respect to these taxes and that the sole method for the collection thereof lies in the enforcement of the statutory lien therefor. It thus seems clear that it was not the intention of the legislature to permit the underlying tax lien to be extinguished by a payment of the assessment under protest, and that on the contrary the statutes clearly contemplate that the tax lien is to remain in force until the moneys paid upon the assessment become finally and absolutely the property of the state and its political subdivisions. Any other construction of the statutes would seriously impair the ability of the taxing authorities to collect taxes and would completely nullify the remedial reassessment statutes. . . . ''

''Respondent erroneously assumes that Political Code, section 3681a, imposes a new lien when in fact this section is not in any wise concerned with the creation of a new lien, but by its very terms purports only to provide for a new assessment and levy. As has been repeatedly held by our courts, assessment and levy are mere steps in the enforcement of a pre-existing tax lien.'' (Citing *City of Santa Monica* v. *Los Angeles County,* 15 Cal. App. 710 [115 Pac. 945] ; *Couts* v. *Cornell,* 147 Cal. 560 [82 Pac. 194, 109 Am. St. Rep. 168] ; *County of San Diego* v. *County of Riverside,* 125 Cal. 495 [58 Pac. 81] ; and one other.)

The cases support appellants' views and the argument advanced is conclusive. It must be held, therefore, that the lien of the 1935–1936 taxes was extant and shown of record at the time of the issuance of the policy of title insurance in question, and that the payment of the taxes under protest did not extinguish the said lien. ▪ Since the policy clearly insured appellants against the obligation to pay the first half of the taxes for that fiscal year and against the lien upon the property for that half of the taxes, and since the reassessment related back to the time of the first assessment, the only fair and reasonable construction to be placed upon the terms of the policy is that it insured appellants against the contingency of such a reassessment. It follows that the complaint

as amended states a valid cause of action against respondent upon the policy of title insurance and that the court erred in sustaining respondent's general demurrer thereto and in granting judgment against appellants.

■ It should be noted that the policy contains an additional exception, not referred to by either of the parties herein, but which appears to be nonetheless involved. This exception provides that the insurance company under the policy does not insure against: "(2) Assessments, taxes or obligations levied or created for any public or district improvement or purpose, unless at the date hereof the amount of such assessment, tax or obligation has been fixed, is payable and is shown as a lien by the official records of (a) the County of Los Angeles; or (b) any City in which said land is located." It might be argued that since the reassessment had not been fixed at the date the policy was issued, appellants were not insured against it. However, this latter exception, when read in connection with the former quoted above and with the other provisions of the policy, creates an ambiguity, which, of course, under the well settled rule, must be resolved in favor of the insured. Moreover, as an exception to the general provisions of the policy it must, according to the equally well settled rule in such cases, be construed strictly as against the insurer. It is thus manifest that this last exception would avail respondent nothing, even if it had been relied upon.

■ It should also be noted, that by the terms of the policy appellants were insured only against the lien of the first half of the 1935–1936 taxes, and that the compromise settlement appears from the complaint to have been made in order to extinguish the entire lien of the taxes for that year. Under the circumstances, it would appear that respondent is liable only for the loss occasioned by the necessity of extinguishing the lien for the first half of the taxes; and since the sum of $6,000 is alleged to have been paid in settlement of both halves of the taxes as reassessed respondent should properly be required to reimburse appellants for but one-half of the sum in question. This point, however, may be raised through a partial affirmative defense to that effect. ■ The fact that the owner of the property appears to have recovered from the county the second half of the taxes, which were paid by appellants, manifestly has no bearing upon respondent's lia-

bility under the terms of the policy of title insurance. If appellants have been placed in the position of having to pay the second half of the taxes twice, obviously they may recover the first payment from the owner of the property, who received it as a refund from the county. No obligation is placed on respondent to reimburse appellants for any payment made for the second half of the taxes.

For the foregoing reasons the judgment appealed from is reversed.

York, P. J., and White, J., concurred.