[Civ. No. 10317. Third Dist. Mar. 29, 1963.]

K. R. NUTTING, Plaintiff and Appellant, v. HERMAN TIMBER COMPANY, Defendant and Appellant.

Maurice A. Harband and John R. Couzens for Plaintiff and Appellant.

A. P. G. Steffes and Daniel J. Higgins for Defendant and Appellant.

PIERCE, P. J.—Cross-appeals are involved. Defendant, Herman Timber Company, a corporation, appeals from a decree quieting plaintiff's title to an interest in real property and in timber thereon. Plaintiff appeals from an order denying plaintiff's motion for permission to file, tardily, a cost bill. We will discuss the appeals in the order stated.

The real property, title to an interest in which was quieted, is a 40-acre parcel in Placer County, California. It is surrounded by a 1,400-acre parcel admittedly owned by defendant. Plaintiff traced his interest in said 40-acre tract by mesne conveyances from an original common owner of both parcels. In 1896 this owner conveyed the 40-acre tract to five grantees, an undivided 1/5th interest to each. J. E. Prewett was one of these grantees; D. A. Russell another. When Prewett died his 1/5th interest was distributed to two heirs equally. In 1948 plaintiff, through an agent, acquired the 1/10th interest of one of these heirs, W. J. Prewett. Upon the death of D. A. Russell his interest went to two heirs. In 1952 plaintiff acquired all of the right, title and interest of these heirs in the merchantable timber growing on the 40-acre tract. Plaintiff, having proved these conveyances, established a prima facie title.

This title defendant corporation sought to defeat by two contentions: (1) That it held title to the entire 40-acre tract by redemption of a tax title which it says the State of California had acquired in 1927, cutting off the Prewett and Russell (and also the other) interests; (2) that it had

acquired ownership therein by adverse possession. Neither claim can be sustained.

In 1921 the 1,400 acres mentioned above were owned by Pennsylvania Gold Mining Company, a corporation (hereinafter "Pennsylvania"). This corporation neither had nor claimed any interest in the 40-acre tract. The County of Placer, however, in 1921 mistakenly included a description of the 40-acre tract with the lands belonging to Pennsylvania on the county's tax roll and it assessed and levied taxes against the lands so described. And the county also in that year assessed, and levied taxes against, the five owners of the 40-acre tract, assessing each separately. Each of these five owners paid his taxes. The 1921 taxes assessed against Pennsylvania, however, were not paid and its lands (purporting to include the 40 acres) were "sold" to the state in 1922, and deeded to the state five years later (July 2, 1927). This deed was recorded. During the years 1921 and thereafter the county continued to assess, and the several owners continued to pay, all taxes levied against the 40-acre tract (excepting that in 1931 there was a delinquency of the Prewett interest and a sale and subsequent deed to the state. Redemption from this delinquency was made by plaintiff after he acquired said interest).

There is no evidence in the record of any knowledge by these owners of the double assessment, or of the sale or subsequent deed to the state for Pennsylvania's delinquency.

In December 1933, one Maxfield (who is also the managing officer and a director in defendant corporation) acquired the interest of Pennsylvania in the 1,400 acres. In 1935 he transferred the 1,400 acres to a corporation in which he was interested. At no time did Maxfield, or this corporation, ever pretend to have any interest in the 40-acre tract. Thereafter, when said corporation became bankrupt, however, the trustee in bankruptcy executed a deed to defendant and in this deed, executed November 27, 1942, said trustee included a description of the 40-acre tract which the bankrupt corporation did not own.

On August 11, 1944, defendant entered into a logging contract with Auburn Lumber Company (hereinafter "Auburn"). Under this contract, Auburn redeemed the property from all delinquent taxes assessed against Pennsylvania (withholding from contract payments due defendant the amount of outlay for such tax redemption). It is this redemption which defendant argues as the basis of its first attack on plaintiff's

title. It argues (1) that the state acquired a perfect title to the 40-acre tract by its tax deed in 1927 after Pennsylvania's 1921 tax "delinquency"; (2) that even if such title was not perfect when acquired it became so one year after recordation of the deed by operation of Revenue and Taxation Code sections 3521 and 175;[1] (3) that redemption by Auburn was effectively a transfer of that tax title by the state to defendant, conveying said "perfect" title to it. At no step is this reasoning correct.

 Its inceptive vice is in its assumption that a redemption equates with a conveyance by the state of its tax-deeded lands to the end that the redeeming owner obtains a greater title than that enjoyed before the delinquency. He does not. A conveyance by the state of tax-deeded lands transfers to the grantee all right, title and interest which the state had in the lands free and clear (with certain exceptions) of encumbrances (Rev. & Tax. Code, § 3712), cutting off a right of redemption, and the purchaser may sometimes receive a better title than the person against whom the taxes were assessed. (*Helvey* v. *Sax,* 38 Cal.2d 21, 24 [237 P.2d 269].) A redemption, however, merely terminates the state's tax title. (Rev. & Tax. Code, § 4112.) The cases cited by defendant as upholding its contention (*People* v. *Maxfield,* 30 Cal.2d 485 [183 P.2d 897], and *People* v. *Lucas,* 55 Cal.2d 564 [11 Cal.Rptr. 745, 360 P.2d 321]) do not stand for the proposition urged by defendant at all. What they do hold is that redemption, although it terminates the state's title, does not nullify it from the beginning and that during the period of the existence of the title, the state is entitled to enjoy all the rents, issues and profits from the land and to recover damages for any trespass—this notwithstanding a subsequent redemption.

---

[1]Revenue and Taxation Code, section 3521 provides in part as follows: "A proceeding based on an allegation of invalidity or irregularity of any deed to the State for taxes or of any proceedings leading up to the deed can only be commenced within one year after the date of recording of the deed to the State in the county recorder's office or within one year after June 1, 1941, whichever is later."

Revenue and Taxation Code, section 175 was added in 1945 (Stats. 1945, ch. 1017, p. 1963). It reads in part as follows: "All deeds heretofore and hereafter issued to the State of California or any taxing agency . . . by reason of delinquency of property taxes or assessments . . . shall be conclusively presumed to be valid unless held to be invalid in an appropriate proceeding in a court of competent jurisdiction to determine the validity of said deed commenced within one year after the execution of said deed, or within one year after the effective date of this section, whichever be later. . . ."

Secondly, the argument assumes the validity of a deed to the state, based not upon an actual tax delinquency but upon a double assessment made in error. The assumption is patently unsound. The deed to the state does not validate the void proceeding. Again defendant relies upon the *Lucas* and *Maxfield* cases as support for the contention and again our reading of these cases reveals no basis for such reliance. On the contrary, the title of the state is dependent upon the validity of the tax proceedings. If the proceedings by which the state acquires title are invalid, the assessed landowner retains his title. (*Helvey* v. *Sax, supra,* 38 Cal.2d 21, 25.)

Nor do Revenue and Taxation Code sections 3521 and 175, which we have quoted above, breathe life into the theretofore void tax proceedings. These sections have been termed "special" statutes of limitations (in *Sears* v. *County of Calaveras,* 45 Cal.2d 518 [289 P.2d 425]) applicable, as against even owners in possession, where the alleged defects of the deed are NOT jurisdictional in the sense that curative acts would not apply, i.e., where the defect in the tax proceedings has been for nonobservance of some procedural notice or other step which the Legislature, without defiance of state or federal Constitution, might have dispensed with altogether. But curative acts do not excuse nor cure nonperformance of constitutionally indispensable steps, and tax deeds which are the product of sales of doubly-assessed lands cannot be reached by either curative acts or general or special statutes of limitation. To attempt to apply either would constitute confiscation. (See *Sheeter* v. *Lifur,* 113 Cal.App.2d 729 [249 P.2d 336].) The precise issue now before the court was presented to the New York Court of Appeals in *Cameron Estates, Inc.* v. *Deering,* 308 N.Y. 24 [123 N.E.2d 621], in a case where there was a double assessment. The court said (on page 623 [123 N.E.2d]):

"There is a vast difference between a tax deed *voidable* for irregularity in the proceedings and a tax deed *void* because the proceedings were a nullity due to prior payment of the tax. A Statute of Limitations ordinarily does not start to run until the right sought to be barred has accrued [citation]. . . .

". . . A Statute of Limitations is one of repose designed to put an end to stale claims and was never intended to compel resort to legal remedies by one who is in complete enjoyment of all he claims, Cooley on Constitutional Limitations, p. 366, nor may it be used to transfer property from the true owner

to a stranger simply because the void tax deed was not challenged within six years from the date of recording. . . ." (See also *George F. Weaver Sons Co.* v. *Burgess,* 7 N.Y.2d 172 [164 N.E.2d 677, 679].)

Defendant's claim to a title based upon its redemption of the state's tax deed must therefore be rejected.

Defendant's contention that the evidence established its title to the 40-acre tract by adverse possession as a matter of law cannot be sustained either. It argues that the deed which it obtained from the trustee in bankruptcy on November 27, 1942, gave it "color of title" since it included in its description the 40-acre tract in which the bankrupt corporation admittedly had no interest. And it urges that its acts during the following five years were sufficient to establish its title by adverse possession. The only acts which it points to were occupancy of the 1,400 acres, the making of the logging contract with "Auburn" Company, redemption as heretofore discussed, with payment of all taxes assessed thereafter, and an alleged posting of the property with no trespassing signs during two years of the five-year period. Defendant also points to the fact that the 1,400 acres surround the 40 acres. No timber was cut on the 40 acres either by defendant or the Auburn Lumber Company. The acts stated were insufficient to create a title by adverse possession.

Plaintiff, as has been shown, had established *legal* title to the 40-acre tract. He is therefore presumed to have been possessed thereof. (Code Civ. Proc., § 321; 73 C.J.S. 204, notes 42, 43.) To defeat the legal title and to establish title by adverse possession "the claimant must show: (1) his possession by actual occupation under such circumstances as to constitute reasonable notice to the owner; (2) his possession hostile to the owner's title; (3) his claim to the property as his own, either under color of title or claim of right; (4) his continuous and uninterrupted possession for five years; (5) the payment by him of all of the taxes levied and assessed upon the property during the period. 'Unless each one of these elements is established by the evidence, the plaintiff has not acquired title by adverse possession.' . . ." (*Laubisch* v. *Roberdo,* 43 Cal.2d 702, 706 [277 P.2d 9].) This court stated in *Clark* v. *Stotts,* 127 Cal.App.2d 589 [274 P.2d 172], at page 592:

". . . It is the further rule that such possession cannot be made out by inference, but only by clear and positive proof. The burden of proving all of the essential elements thereof is

658

upon the person so relying, and if one element is wanting, then the claim must fail.''

A deed constituting ''color of title'' is received in evidence for the purpose of showing that title is adverse and it therefore dispenses with the necessity of other proof that occupancy is hostile. (2 Witkin, Summary of California Law, § 18, p. 875.) But actual knowledge of the deed's invalidity at the time it was taken eliminates the essential element of good faith and thus negates hostility of possession. (*Yuba River Sand Co.* v. *City of Marysville,* 78 Cal.App.2d 421 [177 P.2d 642].) In the case at bench the evidence showed that James Maxfield, the grantor to the bankrupt corporation, was also the secretary-treasurer of defendant corporation and one of its directors. More important, he was *its managing officer who negotiated all of these transactions.* He was well aware that the bankrupt corporation did not own the 40-acre tract because he had not included it in his deed. The trial court, therefore, would have been justified in a belief that the ''color of title'' claimed by the defendant corporation was not claimed in good faith.

There was, moreover, no proof of actual possession in said defendant. Possession of the parcel actually owned by defendant does not constitute proof of possession of the 40-acre tract. (*Wheatley* v. *San Pedro etc. R.R. Co.,* 169 Cal. 505 [147 P. 135].) The claim by James Maxfield that he had posted no trespassing signs on the 40-acre tract during two years of the necessary five-year period, even if believed by the court (and proof thereof was vague and sketchy), would not be sufficient to establish actual possession. (4 Tiffany, Real Property (3d ed.) pp. 416, 417.)

Defendant's contention that plaintiff's claims to the 40-acre tract were barred by the provisions of Code of Civil Procedure, section 318, is likewise without merit. As stated above, Code of Civil Procedure, section 321, creates the presumption that the holder of legal title is in possession, and, unless defendant's title by adverse possession is shown, the occupation of the property by the latter is deemed to have been under and in subordination thereto. Therefore plaintiff's claim was not barred. (*Clark* v. *Stotts, supra,* 127 Cal. App.2d 589, 592.)

Turning to the cross-appeal of plaintiff from the order denying his costs: After the trial court had announced its decision, plaintiff prepared and submitted proposed findings to which objections were submitted by defendant. Appar-

ently, before receipt of these objections, the court had signed the findings submitted by plaintiff and judgment was signed and entered pursuant thereto. Both counsel for plaintiff and defendant were unaware of this and plaintiff's counsel did not learn of it until 24 days later. When he did ascertain the facts *he did not immediately submit a memorandum of costs. Such memorandum was not submitted until 8 days later.* Contemporaneously he filed a notice of motion for relief under Code of Civil Procedure, section 473. Defendant filed a certificate in opposition to said motion. In said certificate, defendant's counsel pointed out that plaintiff's delay in filing the memorandum of costs prevented defendant from learning of the entry of judgment and he was thereby prevented from filing a notice of motion of intention to move for a new trial until the 30-day period after judgment had expired. His certificate alleges that ''This declarant verily believes that counsel for plaintiff intentionally delayed the serving and filing of said Notice of Motion . . . so that counsel for the defendant would not thereby be informed of the entry of judgment on December 30, 1960, until more than thirty days had elapsed since said entry of judgment.'' A counter-affidavit by counsel for plaintiff denied this motive. Plaintiff's motion was denied by the court's minute order. Plaintiff assigns this as error.

 Relief from failure to file a memorandum of costs within the time prescribed by section 1033 of the Code of Civil Procedure may be given under section 473 of said code. (*Soda* v. *Marriott,* 130 Cal.App. 589, 591 [20 P.2d 758].) Denial or allowance of such relief, however, rests in the exercise of a sound discretion by the trial court. (*Brueckner* v. *Ferrera,* 196 Cal.App.2d 398, at p. 403 [16 Cal.Rptr. 515].) The moving party who seeks such relief must not only have a reasonable excuse for the original delay, he must also make an additional showing of diligence in giving notice of motion after discovery of the default. (*Benjamin* v. *Dalmo Mgf. Co.,* 31 Cal.2d 523, 529 [190 P.2d 593].) If the trial court here believed that the eight days which plaintiff had allowed to elapse before filing his notice of motion was a delay designed to prevent defendant from becoming aware of the judgment until the latter's time to make his new trial motion had expired, then the delay was neither reasonable nor was it inadvertent. The trial court was entitled so to believe and we cannot hold the denial of the motion to be an abuse of discretion.

The judgment appealed from by defendant is affirmed. The order appealed from by plaintiff is affirmed. Plaintiff will recover his costs on appeal.

Schottky, J., and Friedman, J., concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied May 22, 1963.