[Civ. No. 8540. Fourth Dist., Div. One. Sept. 22, 1967.]

SETTLORS CORPORATION, Plaintiff, Cross-defendant and Appellant, v. THE CITY OF SAN DIEGO, Defendant and Respondent; HERMAN A. SCHMIDT, Defendant, Cross-complainant and Respondent.

HERMAN A. SCHMIDT, Plaintiff, Cross-defendant and Respondent, v. ARTHUR BOGOSIAN, Defendant and Respondent; SETTLORS CORPORATION, Defendant, Cross-complainant and Appellant.

(Consolidated Cases.)

Wilmer Breeden for Plaintiff, Cross-defendant and Appellant and for Defendant, Cross-complainant and Appellant.

Robert A. Hefner for Plaintiff, Cross-defendant and Respondent and for Defendant, Cross-complainant and Respondent.

No appearance for Defendants and Respondents.

LAZAR, J. pro tem.*—This appeal concerns opposing claims to a parcel of real property denominated "Park" on an 1887 subdivision map of Del Mar Heights, at that time in San Diego County and since annexed to the City of San' Diego. The trial was of two consolidated quiet title actions. The first filed was that in which Settlors Corporation (Settlors) appellant here was plaintiff. The second filed was that in which Herman A. Schmidt (Schmidt) respondent here was plaintiff. Settlors' rights are as successor to Clyde R. A'Neals (A'Neals) who was an active claimant below by virtue of an alleged reserved interest in a fractional acre of "Park." Another party to the trial was the City of San Diego who participated on the theory that "Park" was in fact a dedicated public park. Judgment was rendered against Settlors, A'Neals and the City of San Diego in favor of Schmidt. Only Settlors has appealed.

"Park" was a rough, rural box canyon, enclosed on three sides with high banks, but open to the south, approximately five acres in area. A'Neals became interested in the property in 1946 and for several years thereafter sporadically worked about the property. He testified in part that he planted and cultivated a 50' x 100' vegetable garden, planted "Torrey Pine" trees, cleared a plateau and planted a cactus garden, built a tool shed and fenced the south end of the canyon. In 1963 the tax collector sold "Park" to the State of California for nonpayment of taxes delinquent since 1957. It had been assessed to Edward Ackley, a person who did not appear in the chain of title. A'Neals redeemed "Park" from the State in 1963 and paid an "escaped assessment" for the years 1952 to 1956 inclusive. Thereafter A'Neals conveyed all but .27-acre to Settlors.

Schmidt claimed title by conveyances from the heirs of the record title holders at the time A'Neals asserted he had first gone on to the property. The court, in effect, found that Schmidt had established his title to "Park" by a chain of record title stemming from the issuance of the United States patent.

The key question in the resolution of this "burden of proof minuet" lies in the answer to issue number II of the Joint Pre-Trial Statement and Order which reads: "Whether the deed to the State of California by the County of San Diego and the proceedings leading up to the said deed to the State can now be questioned by virtue of presumptions and the

---

*Assigned by the Chairman of the Judicial Council.

Statutes of Limitations in Sections 175 and 3522 Revenue and Taxation Code; whether said deed transferred subject property to the State of California and whether A'Neals obtained title by virtue of his redemption.''

The claim of title in Settlors as successors to and beneficiary of the asserted adverse possession of A'Neals has been denied by the trial court upon substantial evidence and thus eliminated from consideration by us.

On the other hand, the claim of title by Schmidt as the holder of the near end of the record chain of title has been found good and indorsed by the trial court's judgment in his favor.

 With those two basic and more common questions disposed of it becomes necessary to consider the technical and somewhat unique propositions of the issue quoted above, i.e., that a non-owning redemptioner may acquire a new and invulnerable title by virtue of a tax deed to the State based on an erroneous assessment, a conclusive presumption and a statute of limitations. If the answer is yes, Settlors will at once have proved its own title and destroyed that of Schmidt. If not, then the determination of the court below must stand affirmed.

In simple terms the contention of Settlors (A'Neals) is that ''Park'' was assessed to Edward Ackley; ''Park'' was deeded to the State under that assessment; by virtue of Revenue and Taxation Code, section 175, the deed to the State is conclusively presumed valid unless attacked by an action commenced within the statutory one-year period; Schmidt's quiet title action as an assertion of title in conflict with the deed to the State is an attack upon the deed; Schmidt's action not having been commenced within the one-year period he cannot go behind the deed to establish any lack of title in the assessee; A'Neals having redeemed after the deed and before tax sale by the State succeeds to the title created in the assessee by the statutory conclusive presumption.

The pertinent code sections are these: Revenue and Taxation Code, sections 175, 611, 613, 3521, 4101 and 4112, which are set forth in footnote 1.[1]

---

[1]§ 175: ''All deeds heretofore and hereafter issued to the State of California or to any taxing agency, including taxing agencies which have their own system for the levying and collection of taxes, by reason of delinquency of property taxes or assessments levied by any taxing agency or revenue district, shall be conclusively presumed to be valid unless held to be invalid in an appropriate proceeding in a court of competent jurisdiction to determine the validity of said deed commenced within one year after the execution of said deed, or within one year

■ In the absence of proof to the contrary it is presumed that the person assessed was known to the assessor to be the owner. (*Hewes* v. *McLellan*, 80 Cal. 393, 395 [22 P. 287].) However, an erroneous assessment to one who has no interest in the real property assessed does not render the assessment invalid. (*Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385, 402 [175 P.2d 512]; *McCracken* v. *Hummel*, 43 Cal.App.2d 302, 304 [110 P.2d 700]) and property may validly be assessed to an "unknown owner" (Rev. & Tax. Code, § 611).

■ A deed to the State is prima facie evidence that the property was assessed as required by law (Rev. & Tax. Code, § 3517).

■ The title conveyed by a tax deed to the State is absolute (except for specified interests not here applicable; see Rev. & Tax. Code, § 3520), subject only to defeasance by redemption. "It is not the same title as that of a private purchaser, because the purpose of the conveyance is not the acquisition of the property but the collection of the taxes. (*Anglo Cal. Nat. Bank* v. *Leland*, 9 Cal.2d 347, 353 [70 P.2d 937].) However, the only difference between the state's title and that of a private purchaser is the privilege of redemption." (*People* v. *Maxfield*, 30 Cal.2d 485, 487 [183 P.2d 897].) ■ The right of redemption is not a vested interest in the land sold to the State. (*Helvey* v. *Bank of America*, 43 Cal.App.2d 532, 537 [111 P.2d 390].)

---

after the effective date of this section, whichever be later. Such proceedings may be prosecuted within the time limits above specified in the manner and subject to the provisions of Sections 3618 to 3636 of this code."

§ 611: "If the name of an absent owner is known to the assessor, or in the case of real property, if it appears of record in the office of the county recorder, the property shall be assessed to such owner; otherwise, the property shall be assessed to unknown owners."

§ 613: "A mistake in the name of the owner or supposed owner of real estate does not render invalid an assessment or any tax sale."

§ 3521: "A proceeding based on an alleged invalidity or irregularity of any deed to the State for taxes or of any proceedings leading up to the deed can only be commenced within one year after the date of recording of the deed to the State in the county recorder's office or within one year after June 1, 1941, whichever is later.

"Sections 351 to 358, inclusive, of the Code of Civil Procedure do not apply to the time within which a proceeding may be brought under the provisions of this section."

§ 4101: "Tax-sold property and, if the right of redemption has not been terminated, tax-deeded property may be redeemed until the right of redemption is terminated."

§ 4112: "On redemption, the deed becomes null and any interest acquired by virtue of the sale to the State ceases."

Who may redeem is not currently the subject of statutory definition (See Rev. & Tax. Code, § 4101, *supra*). In 1955 there was deleted from the section the sentence "The 're-demptioner' is the person whose estate has been sold or his successor in interest." This court declined to see this deletion as giving a new status to volunteers. "The appellants assert that by this change the Legislature meant to give some kind of right to a volunteer who pays delinquent taxes to the state. However, it is a strange argument that would give to a volunteer *sub silentio* a right which only the former owner of the land, or his heirs, have always previously enjoyed.

■ "The general rule is that a volunteer acquires no right whatsoever by the payment of taxes on the land of another. [Citations.] " (*Spencer* v. *Harmon Enterprises, Inc.,* 234 Cal.App.2d 614, 626 [44 Cal.Rptr. 683].)

In the same decision it was held that the volunteer's payment of delinquent taxes gave no color of title to the volunteer (p. 625). (See also *Potter* v. *County of Los Angeles,* 251 Cal.App.2d 280 [59 Cal.Rptr. 335].)

■ A'Neals as a redemptioner must be considered a volunteer. Having failed in his claim of adverse possession, even a concession of simple possession for some period would not provide an interest in the property sufficient to change his status. (See Civ. Code, § 1006; *Langstaff* v. *Mitchell,* 119 Cal.App. 407, 411 [6 P.2d 546].) It follows that A'Neals was not a valid redemptioner and acquired nothing by the attempted redemption. In this connection it should be kept in mind that we are not concerned with the rights of a purchaser at an invalid tax sale and the cases relating to such situations have no application to the facts here.

■ What of the contention that the deed to the State is conclusive as to Edward Ackley's ownership of the property at the time of assessment? There are a number of answers to that question which deny the point. Most significant for this consideration is the language of Revenue and Taxation Code, section 4112 quoted in the footnote. That section imposes not only a statutory death but a statutory disintegration upon the deed upon which Settlors must rely if Ackley were to be a foundational predecessor in interest. "Null" is defined to mean: "1a: Having no legal or binding force or validity; of no efficacy: b. capable of being regarded as void: . . . .

"2: Amounting to nothing" (Webster's Third New International Dictionary). It is consistent with the context in which used in the particular statute and the scheme of tax

deed legislation generally that the word be given its primary and literal meaning. From a purely mechanical standpoint it is obvious that if the deed to the State becomes a nullity there is nothing left to which the conclusive presumption of Revenue and Taxation Code, section 175 can attach, thus eliminating by the very act of redemption that peg upon which Settlors and A'Neals sought below and seek here to rely.

Of compelling significance, however, is the fact the validity of taxing procedures (in the context with which we are concerned) does not depend upon who is assessed but does depend upon what is assessed, except where the property interest is assessed twice and the tax deed to the State is void. (*Nutting* v. *Herman Timber Co.*, 214 Cal.App.2d 650 [29 Cal.Rptr. 754].) Here we deal with but one assessment, regardless of the error in assessed ownership. As stated in *Nutting, supra,* in response to the argument that assessment to a non-owner followed by a deed to the State and the lapse of the one-year limitation period before redemption it is a fallacious ". . . assumption that a redemption equates with a conveyance by the state of its tax-deeded lands to the end that the redeeming owner obtains a greater title than that enjoyed before the delinquency. He does not." [P. 655.] A stranger's rights could hardly be expected to rise higher (*Cf., Spencer* v. *Harmon Enterprises, Inc., supra,* 234 Cal.App.2d 614).

Settlors is in the position of having failed to establish any facts which would justify a decree in its favor. As an affirmative claimant to title it has its own burden of proof in that regard and must depend upon the strength of its own claim. (See 41 Cal.Jur.2d, Quieting Title, §§ 68, 69, p. 556 et seq.; *Biaggi* v. *Mainero,* 60 Cal.App. 608, 610 [213 P. 541].) No title having been shown in Edward Ackley it was not error to refuse admission into evidence of the quit-claim deed from the Ackley heirs. Furthermore, the trial court did not abuse its discretion in denying the motion for new trial for the reason that even if the motion were otherwise good and had been granted, the newly discovered evidence would tend only to defeat Schmidt's title and would not establish Settlors'.

It appears also to be correct, as asserted in respondent's brief, that the foreclosure proceedings, as relied upon in support of the motion for new trial, did not include "Park" which would render the newly discovered evidence irrelevant.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.