[Civ. No. 41542. Second Dist., Div. Five. Feb. 14, 1974.]

BERT H. PAUL, JR., as Trustee, etc., Plaintiff and Respondent, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Defendant and Appellant.

266

## Counsel

John H. Larson, Acting County Counsel, and Max E. Truex, Deputy County Counsel, for Defendant and Appellant.

Wise, Kilpatrick & Clayton, Inc., George E. Wise and William D. Easton for Plaintiff and Respondent.

## Opinion

**HASTINGS, J.**—This is an appeal by Los Angeles County Flood Control District, defendant, to a quiet title action brought by Bert H. Paul, Jr., as trustee for Inner Harbor Land Company. A judgment quieting title to plaintiff to a subsurface property was granted by the trial court.

### Facts

The trial court determined this case based on a stipulated set of facts which, in substance, are as follows: In 1919, Inner Harbor Land Company (IHLC) owned approximately two acres of land comprising fifteen lots (subject property), located in what is now known as improved Los Angeles river channel. In that year, the Los Angeles County Flood Control District (FCD) commenced an action for condemnation against IHLC to secure an easement on subject property for construction of walls, fences, embankments and excavations. An interlocutory judgment granting the easement was entered on September 16, 1920, and a final judgment was entered on November 3, 1927. The effect of the judgment was to convey use of the surface estate to FCD, with IHLC owning title in fee simple to the underlying mineral estate.

In 1920, the subject property was assessed for taxation,[1] but there is no record indicating that IHLC ever paid this tax. The unpaid tax became a lien upon subject property on March 1, 1920. On June 30, 1921, subject property was marked "Sold to the State" on the tax delinquent assessment list.[2] There is no record of any taxes being assessed after 1920 on

---

[1]The stipulated facts did not include the amount of the assessment. FCD's opening brief put the amount at $30.89.

[2]Marking the property "Sold to the State" on the tax delinquent assessment list does not convey title nor remove the state's tax lien. It is primarily a book transaction that commences the five-year redemption period.

subject property. On February 27, 1926, IHLC's corporate powers were suspended for failure to pay its corporate franchise taxes to the state.

The state did nothing further to enforce its tax lien on subject property until July 2, 1951, when it executed 15 tax deeds conveying the property to itself. On September 29, 1952, the state sold and deeded subject property to FCD for a consideration of $1.00 for each of the 15 lots ($15 total). In May of 1964, FCD entered into a subsurface oil and gas lease respecting subject property with Pauley Petroleum Inc.[3] In 1966, IHLC's corporate powers were revived for the limited purpose of permitting it to wind up its corporate affairs. On April 24, 1969, IHLC filed this action to quiet title to subject property.

## DISCUSSION

It will expedite an understanding of this case to briefly paraphrase the ultimate issue involved. It is as follows: The state has issued to itself a tax deed to real property on which no taxes were due and owing. The state seeks to validate this deed by invoking the statutory presumption that a tax deed is valid if not contested within a one-year period. Applicable to this novel case are the following code sections.

Section 2195 of the Revenue and Taxation Code[4] provides: "After 30 years succeeding the time, heretofore or hereafter, when any tax becomes a lien, if the lien has not been otherwise removed, the lien ceases to exist and the tax is conclusively presumed to be paid. The official having charge of the records of the tax shall mark it 'Conclusively presumed paid.' "

Section 175 provides: "All deeds heretofore and hereafter issued to the State of California or to any taxing agency, including taxing agencies which have their own system for the levying and collection of taxes, by reason of delinquency of property taxes or assessments levied by any taxing agency or revenue district, shall be conclusively presumed to be valid unless held to be invalid in an appropriate proceeding in a court of competent jurisdiction to determine the validity of said deed commenced within one year after the execution of said deed, or within one year after the effective date of this section, whichever be later. Such proceedings may be prosecuted within the time limits above specified in the manner and subject to the provisions of Sections 3618 to 3636 of this code."

Section 3521 provides: "A proceeding based on an alleged invalidity or

---

[3] Pauley Petroleum did not appeal the judgment.

[4] Unless otherwise stated, all code sections referred to are from the Revenue and Taxation Code of California.

irregularity of any deed to the State for taxes or of any proceedings leading up to the deed can only be commenced within one year after the date of recording of the deed to the State in the county recorder's office or within one year after June 1, 1941, whichever is later.

"Sections 351 to 358, inclusive, of the Code of Civil Procedure do not apply to the time within which a proceeding may be brought under the provisions of this section."

The tax lien involved here attached to subject property on March 1, 1920, and constituted a valid lien on the property for 30 years. No action was taken by the state during the 30 years to remove its lien, or to otherwise protect its interest. The 30-year period ended March 1, 1950, but it was not until July 2, 1951 that the state executed its tax deeds to itself.

## Issues on Appeal

FCD contends:

1. Revenue and Taxation Code sections 175 and 3521 control the disposition of the case and not Revenue and Taxation Code section 2195, relied upon by the trial court.

2. The court erred in concluding that the tax deeds containing due process violations, i.e., jurisdictional defects, may be attacked at any time.

## Argument

1. FCD's first argument evolves as follows:

Sections 175 and 3521 are one-year statutes of limitation with section 175 containing a conclusive presumption that a tax deed is valid unless held to be invalid by a court proceeding within one year after execution of said deed; that section 2195 is a conclusive presumption that the taxes were paid; that where there is a conflict between statutes with conclusive presumptions, we must look to the reasons and intentions of the Legislature when the code sections were adopted and resolve the conflict, if possible, on the substantive reasons that would give one section preference over the other. Under this approach, it is argued that a mechanical application of section 2195 violates the legislative intent behind sections 175 and 3521 by preventing the state to deed property to itself after 30 years, even when the underlying tax has not been paid. We do not elaborate on the reasons

behind the legislation[5] because the law applicable here does not require us to find the sections in conflict. The heart of this case is whether the tax deed is void on its face, and, if so, can it be attacked at any time, or are sections 175 and 3521 controlling.

It is axiomatic that if the deed is void it is because section 2195 renders it so. The section is unambiguous and mandatory in its direction. If, after 30 years, the lien has not been removed, the section states: ". . . the lien ceases to exist and the tax is *conclusively presumed to be paid.* The official having charge of the records of the tax shall mark it 'Conclusively presumed paid.' " (Italics added.) In substance, the trial court's conclusions of law were: (1) Prior to March 1, 1950, the tax lien had not been removed; (2) On said date the taxes were conclusively presumed paid per section 2195; (3) After that date the state had no interest in, or lien on, the subject property; (4) The July 2, 1951, tax deeds were predicated on liens no longer a charge upon the subject property and constituted a taking of private property without due process of law — a jurisdictional defect and therefore void; (5) Void deeds may be attacked at any time.

The trial court's reasoning is very persuasive.

 The lien of a property tax exists only by virtue of statute. (*Grant* v. *Cornell,* 147 Cal. 565, 567 [82 P. 193]; 46 Cal.Jur.2d, Taxation, § 230, p. 755.) And in 51 American Jurisprudence, Taxation, sections 1010, 1014, are the following statements:

"Tax liens, their duration, extent, and priority, are creatures of the local constitutions and statutes; . . .

"Tax liens are not to be extended by implication or enlarged by judicial construction. A tax is a lien on property only so far as expressly made a lien by the statute. It exists and attaches only according to such terms and conditions as are prescribed by the statute creating it.

". . . it is undoubtedly the general rule that the legislature may abolish or legislate out of existence a tax lien of any kind previously created by it in its favor . . . unless prevented from doing so by some special provision of the state constitution."[6]

---

[5]Briefly section 2195 was primarily enacted to resolve problems of careless bookkeeping in many counties, such as old tax rolls showing taxes unpaid which in fact were paid. (See *Ducey* v. *Dambacher,* 27 Cal.App.2d 658, 661-662 [81 P.2d 597].) Statute of limitation sections intend, among other things, to finalize tax enforcement proceedings by conveying marketable title, and to get the property from those that do not pay their taxes to those that do.

[6]Section 2187 provides: "Every tax on real property is a lien against the property assessed."

Section 2186 provides: "Every tax has the effect of a judgment against the person."

Section 2194 provides, in part: ". . . the judgment is satisfied and the lien removed when, but not before, (a) the tax is paid or legally canceled . . . ."

Manifestly, the provision of section 2195 that the tax "is conclusively presumed to be paid" removed the lien. Concomitant therewith is the well-settled general rule that, when taxes on property have been paid prior to a sale therefor, the tax sale proceedings are null and void and confer no title upon the purchaser. (51 Am.Jur., Taxation, § 1067.)

California is in accord with this majority principle. In *Nutting v. Herman Timber Co.,* 214 Cal.App.2d 650 [29 Cal.Rptr. 754], five persons had owned forty acres of timber land. The County of Placer mistakenly included a description of the 40 acres with 1,400 acres belonging to another. Taxes assessed against the forty acres had been paid by the five owners. Taxes assessed against the 1,400 acres had not been paid. The 1,400 acres were sold to the state for the tax lien. Plaintiff in the action had acquired the forty acres from the five previous owners. It was argued that the state acquired perfect title to the 40 acres by its tax deed. In rejecting the contention, the court states at page 656:

". . . the argument assumes the validity of a deed to the state, based not upon an actual tax delinquency but upon a double assessment made in error. The assumption is patently unsound. The deed to the state does not validate the void proceeding. . . . The precise issue now before the court was presented to the New York Court of Appeals in *Cameron Estates, Inc. v. Deering,* 308 N.Y. 24 [123 N.E.2d 621], . . . the court said . . . 'There is a vast difference between a tax deed *voidable* for irregularity in the proceedings and a tax deed *void* because the proceedings were a nullity due to prior payment of the tax.' "

And in *National H. Co. v. Title I. & T. Co.,* 45 Cal.App.2d 215, 223-224 [113 P.2d 906], where the question before the court was whether a payment of taxes under protest removed the tax lien, the court made it clear that the existence of the lien was necessary before the state could act. It said at pages 223-224: " '. . . In fact, it is only by maintaining the existence of the underlying lien imposed by Political Code, section 3718, that the state can be assured of collecting its taxes. If the payment of a particular assessment under protest or the cancellation of a particular assessment by the Board of Supervisors or by the courts could operate to extinguish the lien imposed by Political Code, section 3718, then the state would be entirely without any remedy for the collection of taxes in such

instances. Once the underlying lien is extinguished, the reassessment and the relevying of taxes under Political Code, section 3681a, would be idle acts because such reassessment and relevy would be merely an attempt to enforce a non-existent lien. . . .

" 'We must remember in considering this question that there is no personal liability on the owner of real estate with respect to these taxes *and that the sole method for the collection thereof lies in the enforcement of the statutory lien therefor. . . .' "* (Italics added.)

We conclude that a tax deed by the state conveying property to itself—based on alleged nonpayment of the tax which allowed the lien—is void if the tax on the property has been paid. This, however, does not completely solve the problem here. We must decide if section 2195, which substitutes a statutory form of liquidation of the lien for actual payment, qualifies as a payment that renders the deed void.

We believe that it does. ■ A conclusive presumption, called also an "absolute" or "irrebuttable" presumption, is a rule of law determining the quantity of evidence requisite for the support of a particular averment *which is not permitted to be overcome by any proof that the fact is otherwise.* (Black's Law Dictionary (4th ed. 1951).) Following in context is 46 California Jurisprudence 2d, Taxation, section 232, pages 757-758, which states:

"The code provides that every tax lien has the effect of an execution duly levied against the property subject to the lien, and that the lien is removed only when the tax is paid or legally canceled . . . . Other than this requirement, after 30 years succeeding the time when any tax becomes a lien, if the lien has not been otherwise removed it ceases to exist and the tax is conclusively presumed to be paid."

Here, removal of the lien was clearly accomplished. It was legally canceled, with a conclusive presumption of payment, which does not permit any evidence by way of proof that the fact is otherwise. The state is powerless to deed itself the property based on a nonexistent lien.

2. ■ A statute of limitations will not run in favor of the holder of a tax deed void on its face (85 C.J.S., Taxation, § 984(2), p. 494; see also *Lathrop* v. *Kellogg,* 158 Cal.App.2d 220 [322 P.2d 572]; and *Edwards* v. *City of Santa Paula,* 138 Cal.App.2d 375 [292 P.2d 31].)

*Nutting* v. *Herman Timber Co., supra,* could not be more appropriate. The court states on pages 656-657:

"Nor do Revenue and Taxation Code sections 3521 and 175, which we have quoted above, breathe life into the theretofore void tax proceedings.

These sections have been termed 'special' statutes of limitations (in *Sears* v. *County of Calaveras*, 45 Cal.2d 518 [289 P.2d 425]) applicable, as against even owners in possession, where the alleged defects of the deed are NOT jurisdictional in the sense that curative acts would not apply, i.e., where the defect in the tax proceedings has been for nonobservance of some procedural notice or other step which the Legislature, without defiance of state or federal Constitution, might have dispensed with altogether. But curative acts do not excuse nor cure nonperformance of constitutionally indispensable steps, and tax deeds which are the product of sales of doubly-assessed lands cannot be reached by either curative acts or general or special statutes of limitation. To attempt to apply either would constitute confiscation."

In *Nevada Irr. Dist.* v. *Keystone Copper Corp.*, 224 Cal.App.2d 523 [36 Cal.Rptr. 775], the mineral rights had been severed from the surface rights, creating two separate estates in fee simple. The assessor intended only to assess and tax the surface estate because there was no intent by the district to assess subsurface mineral rights. Subsequently, a tax deed with a description broad enough to include the surface and subsurface rights was executed. A quiet title action was brought by the owner of the subsurface estate, and the defense was that the statute of limitations barred the action. The court disagrees, citing *Nutting* with approval, and also states at pages 529-530:

"Although no California case in point on this precise question has been called to our attention, the problem is not appreciably different from that existing where a taxing agency mistakenly doubly assesses land, so that a nondelinquent tract is also included in a larger parcel owned by another who allows his taxes to become delinquent. The rule in such cases is well settled (1) that the tax deed conveys no title to the nondelinquent land; and (2) that a special statute of limitations barring actions based upon the alleged ineffectiveness of a tax deed after a specified period, is inapplicable. . . ." (See also *Picchi* v. *Montgomery*, 261 Cal.App.2d 254 [67 Cal.Rptr. 880]; and *Alma Investment Co.* v. *Krausse*, 117 Cal.App.2d 740 [256 P.2d 1017].)

FCD argues that sections 175 and 3521 do preclude a challenge of a void deed after one year, and cites *Elbert, Ltd.* v. *Gross*, 41 Cal.2d 322 [260 P.2d 35]; *Tannhauser* v. *Adams*, 31 Cal.2d 169 [187 P.2d 716, 5 A.L.R.2d 1015]; and *Miller* v. *McKenna*, 23 Cal.2d 774 [147 P.2d 531] as supporting. In *Tannhauser*, the tax collector failed to give notice to the

delinquent owner of the day and hour for the sale (for delinquent taxes). The state sold the property to defendant in January of 1941. In 1945, plaintiff brought action in quiet title alleging irregularity in the tax proceedings. The court held the action was barred by section 3521, saying at page 171: "Defendant contends that plaintiff's action is barred by the limitations provisions of sections 3521 and 3725 of the Revenue and Taxation Code, and that failure to mail the notice before deed to the state was cured by the validating acts of 1943 and 1945 (Stats. 1943, p. 1993, ch. 458; Stats. 1945, p. 2176, ch. 1134; 3 Deering's Gen. Laws, Acts 8443, 8443a). Plaintiff maintains that failure to mail the notice is a 'jurisdictional' defect in the tax proceedings and that therefore his right to raise it cannot be cut off by statutes of limitations and the defect is not curable by subsequent legislative validating acts. We are of the view, however, that although such a failure has on occasion been termed a 'jurisdictional' defect, a delinquent taxpayer's right to raise it may, at least under the circumstances shown in this case, be terminated by limitations statutes. . . ."

*Elbert* is also a case where notice was not given, and *Tannhauser* is cited with approval. A six-month statute of limitations was held valid where the property was sold for nonpayment of a bond.

*Tannhauser* does not say failure to give statutory notice renders the deed void, it merely says "that although such a failure has on occasion been termed a 'jurisdictional' defect, a delinquent taxpayer's right to raise it may, *at least under the circumstances shown in this case,* be terminated by limitations statutes." (Italics added.)

*Miller* does not aid FCD. While it lists certain jurisdictional requisites in analyzing curative legislation, it does not name them all, nor address itself to the problem here.

The real question here is whether a statute of limitations can deprive the property owner's right to challenge the state's deed to itself (then to another) under the undisputed facts of this case.

The reference in *Tannhauser* to a jurisdictional defect is stated in a manner that can be interpreted in various ways. It could be strongly argued that it is implying that failure to give notice has improperly been termed a jurisdictional defect. But in any event it is obiter and not a command to us to overrule well established law to the contrary. FCD's contention would render *Nutting* and *Nevada Irr. Dist.* (16 and 17 years, respectively, after

*Tannhauser*) and many other cases[7] erroneous. The few cases relied upon by FCD to justify this argument do not contain language overruling the majority rule thereby rendering void deeds subject to the one-year statute of limitations. Each case is concerned with an irregularity in the proceedings, and not with one of the fundamental defects (sometimes called jurisdictional) that make a deed void *ab initio*.

■ Tax sale proceedings are clearly *in invitum*, thus every essential step leading to the execution of a tax deed must be strictly followed. It is true that this rule has been relaxed. This is because curative acts by the Legislature render innocuous errors and irregularities that do not violate jurisdictional and due process requirements. (47 Cal.Jur.2d, Taxation, § 291, pp. 37-38.) However, if we accept FCD's premise, any state or governmental official could in an *"in invitum"* type tax proceeding execute a deed formerly void *ab initio* only to have it conclusively validated one year later by sections 175 and 3521. The dangers inherent in *in invitum* taxes are obvious and the courts must not permit so-called short term statutes of limitation or curative acts to remove due process requirements. We are not unmindful of the fact that the state here could have deeded the property to itself within the 30-year period (absent other evidence that the tax had been paid) and received a valid tax deed; however, it did not, thereby bringing section 2195 into play. The operative effect, as stated earlier, was to render the state powerless to deed the property to itself. The fact that the state *could* have acted but did not doesn't render the deed less void. It is the law in force at the time the property is deeded to the state that is controlling.

FCD further reasons that the deed was voidable and not void, and therefore subject to the one-year statute of limitations. The premise for this argument is that nonjurisdictional defects in tax deeds are curable by legislation whereas jurisdictional defects cannot be cured because it would violate a constitutional right such as due process; and that the California Legislature could have cured the alleged defect here by providing in section 2195 that deeds signed or recorded more than 30 years after the lien date were valid. This of course would create an anomaly and further defeat the purpose of the section. The point is that the Legislature did *not* do this and

---

[7]Other cases holding void deeds may be attacked at any time and decided after *Tannhauser* and its progeny, are: *People* v. *Chambers* (1951) 37 Cal.2d 552 [233 P.2d 557]; *Picchi* v. *Montgomery* (1968) *supra*, 261 Cal.App.2d 246; *Settlors Corp.* v. *City of San Diego* (1967) 254 Cal.App.2d 631 [62 Cal.Rptr. 347]; *Edwards* v. *City of Santa Paula* (1956) 138 Cal.App.2d 375 [292 P.2d 31]; *Alma Investment Co.* v. *Krausse* (1953) *supra*, 117 Cal.App.2d 740; *Gaspard* v. *Edwin M. LeBaron, Inc.* (1951) 107 Cal.App.2d 356 [237 P.2d 278].

the court must give proper interpretation to a legislative conclusive presumption that leaves no doubt about the result. The section effectively removed the lien. Therefore, a deed relying on the lien is void.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.