[Civ. No. 910. Fifth Dist. Apr. 17, 1968.]

ENRICO PICCHI et al., Plaintiffs and Respondents, v. JOHNSON C. MONTGOMERY et al., Defendants and Appellants.

Johnson C. Montgomery, in pro. per., for Defendants and Appellants.

Cavalero, Dietrich & Bray and Mark S. Bray for Plaintiffs and Respondents.

STONE, J.—The basic question presented by this appeal is whether the tax assessor and the tax collector for San Joaquin County properly assessed and properly sold to the state for delinquent taxes, an interest for a term of years in an undivided one-half interest in oil and gas rights in respondents' land.

Respondents derived title to their real property by mesne conveyances from the General American Life Insurance Company. The grant deed from General American to respondents' predecessors in interest contained the following reservation:

". . . excepting and reserving to General American Life Insurance Company and its successors and assigns an undivided one-half interest in oil, gas and other minerals on, in and under said land for a period of ten years and as long thereafter as such oil, gas or other minerals are produced from said land in paying quantities together with the right at all times to explore, drill for, mine and remove the same together with all other rights and privileges incident thereto, subject to and except reservations, exceptions and mineral grants of record, if any and rights-of-way, leases and easements, whether or not of record, encroachments and questions of survey, if any."

These reserved oil and gas rights of General American were separately assessed and placed on the secured roll, in accordance with Revenue and Taxation Code section 107, which in pertinent part provides: "Except as provided in this section, possessory interests shall not be considered as sufficient security for the payment of any taxes. Leasehold estates for the production of gas, petroleum and other hydrocarbon substances from beneath the surface of the earth, and other rights relating to such substances which constitute incorporeal hereditaments or profits a prendre, are sufficient security for

the payment of taxes levied thereon. Such estates and rights shall not be classified as possessory interests, but shall be placed on the secured roll. . . ."

The property was described on the assessment roll as follows: "Und ½ int in—The poss int & all other right title & int in & to certain oil-petroleum & other hydro-carbon substances inc natural gas located on foll desc real estate . . ."

Tax bills were sent direct to General American, who paid the taxes for the first nine years of the 10-year life of the reservation, but failed to pay the tenth year.

Upon notification of the delinquency by the assessor, the tax collector treated General American's interest as secured property and transferred it to the delinquent assessment roll. The whole case is about whether this procedure was proper or whether the oil and gas rights should have been treated as a possessory interest and seized and sold under that part of section 107 which provides: "In the event of delinquency in the payment of any installment of taxes on such leasehold estates or rights, they shall be subject to seizure and sale in the same manner as provided for the seizure and sale of possessory interests in Sections 2914 to 2919, inclusive, at any time within one year[1] after the delinquency. Suit may be brought against an assessee of such taxes in the event of delinquency in the payment thereof."

The interest of General American was sold to the state for the 1953-1954 delinquency, and tax deeds were issued to the state June 29, 1959. The reserved interest of General American expired by its own terms at the end of the primary period, July 18, 1954, no oil and gas having been discovered, and General American quitclaimed any interest in the property to respondents on June 10, 1960.

In 1963, at a public auction held by the state for the purpose of selling parcels of tax-delinquent real property, appellants purchased what purported to be the tax deeded oil and gas interests formerly owned by General American. Deeds from the state to appellants were executed in March and May 1963; as to each parcel the interest conveyed was described as: "UND ½ INT IN—THE POSS INT AND ALL OTHER RIGHT TITLE AND INT IN AND TO CERTAIN OIL-PETROLEUM AND OTHER HYDRO-CARBON SUBSTANCES INC NATURAL GAS LOCATED ON FOLL DESC REAL ESTATE——"

It is significant that the deed not only describes the property deeded as "the possessory interest," but it specifically

---

1In 1957 this was amended to read "within three years."

limits the interest to ''certain oil-petroleum and other hydrocarbon substances including natural gas.''

Respondents filed an action to quiet title to the property and to clear from the record any claim of appellants in and to the oil and gas rights in respondents' real property. Appellants answered, claiming ownership in perpetuity of an undivided one-half interest in the oil and gas rights to respondents' property, unfettered by the limiting terms of General American's reservation ''to ten years and as long thereafter'' as such oil and gas are produced.

The trial court entered judgment in favor of respondents, upon the ground the oil and gas rights assessed to General American were sold in the manner provided for real property; that is, they were tax deeded, while Revenue and Taxation Code, section 107, requires that such rights shall be seized and sold in the manner provided for the seizure and sale of possessory interests.

The critical issue in the case is whether the reservation by General American of an undivided one-half interest in the oil and gas for a term of 10 years or as long thereafter as such oil and gas are produced, constituted ''an incorporeal hereditament or profit a prendre'' within the rationale of that language as used in section 107, or whether it was an interest in real property outside the purview of section 107.

The peculiar nature of oil and gas rights has given rise to a highly specialized field of law in California, differing in several respects from the classic law governing real property. (Wm. E. Colby, *The Law of Oil and Gas,* 31 Cal.L.Rev. p. 357.) In *Callahan* v. *Martin,* 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871], the California Supreme Court rejected the oil and gas in place doctrine, giving ''recognition to the fugacious character of the substances involved.'' A later case, *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637 [52 P.2d 237], gave articulation to the characteristics of the ownership of oil and gas rights. The court said, at pages 649-650: ''The owner of land has the exclusive right on his land to drill for and produce oil. This right inhering in the owner by virtue of his title to the land is a valuable right which he may transfer. The right when granted is a profit *à prendre,* a right to remove a part of the substance of the land. A profit *à prendre* is an interest in real property in the nature of an incorporeal hereditament. (*Callahan* v. *Martin, supra.*) . . . Thus, although the oil and gas in place doctrine is rejected, interests in oil rights which are estates in real property may be granted separate and apart from a grant of surface title. The grantee

of the profit has a right to such possession of the surface as is necessary and convenient for the exercise of the profit, but he has no general estate in the surface."

■ Thus it is clear from *Callahan* and *Dabney-Johnston* that the right to drill for and produce oil, whether owned in fee or for a term, is "a profit *à prendre,* a right to remove a part of the substance of the land," and that "A profit *à prendre* is an interest in real property in the nature of an incorporeal hereditament."

The question arises as to what is meant by "profits a prendre or incorporeal hereditaments" as used in section 107, in relation to the assessment of possessory interests.

■ Dissecting the pertinent language of section 107, we find that all possessory interests are not assessed in the same manner, for it reads: *"Except* as provided in this section, possessory interests shall not be considered as sufficient security for the payment of any taxes." (Italics added.) The exceptions, that is, possessory interests that are considered sufficient security, are then delineated, first, "Leasehold estates for the production of gas, petroleum and other hydrocarbon substances from beneath the surface of the earth . . ."; and, second, "other rights relating to such substances which constitute incorporeal hereditaments or profits a prendre. . . ."

As noted above, *Callahan* and *Dabney-Johnston* define all rights in oil and gas as *profits à prendre,* an incorporeal hereditament; so that at first blush it would seem that the broad language of section 107 would encompass every *profit à prendre* or incorporeal hereditament, whether owned in perpetuity or for a term of years. But the Supreme Court has said that although all oil and gas rights are *profits à prendre* and incorporeal hereditaments, there are two categories of such rights, those in perpetuity and those held for a term of years. These two classifications were formulated in the *Dabney-Johnston* opinion by the following language at page 649: "The profit *a prendre,* whether it is unlimited as to duration or limited to a term of years, is an estate in real property. If it is for a *term of years, it is a chattel real,* which is nevertheless an estate in real property, *although not real property,* or real estate. (*Callahan* v. *Martin, supra,* pp. 506, 507.) Where it is *unlimited in duration,* it is a *freehold interest, an estate in fee, and real property or real estate."* (Italics added.)

Thus the Supreme Court has categorized a *profit à prendre* for a term of years as a chattel real, and a *profit à prendre*

owned in perpetuity or unlimited in duration as "a freehold interest, an estate in fee, and real property or real estate."

Viewed in the light of *Dabney-Johnston*, the ownership of oil and gas rights limited to a term of years constitutes a possessory interest within the sense of section 107.

Appellants seem to argue that because the grantor who here reserved oil and gas rights for a term of years was originally the owner of the surface and all other rights in the land in fee, the possessory interests emanating from a reservation for a term should be treated differently from possessory interests based upon a leasehold. The nature of possessory rights in oil and gas are not determined by the estate from which they were carved, but what the owner has after the conveyance is made. Thus, to treat leasehold interests in oil and gas rights in the same manner as a reservation of ownership of the same rights for a term of years is entirely consistent, because a landowner who conveys all of his right, title and interest in and to his land, reserving only an interest in oil and gas for a term of years, as General American did here, retains rights which parallel the rights granted to a lessee under an oil and gas lease. (*Dabney-Johnston Oil Corp.* v. *Walden, supra,* 4 Cal.2d at p. 651; *Delaney* v. *Lowery,* 25 Cal.2d 561, 570-571 [154 P.2d 674].) In sum, a leasehold interest for a term of years and a reservation or grant by deed for a term of years, each is a possessory interest in real property and a chattel real.

The trial court correctly found the 10-year determinable fee in oil and gas reserved by General American to be an incorporeal hereditament or *profit à prendre,* and a possessory interest within the rationale of Revenue and Taxation Code, section 107.

Appellants take the position that since the first paragraph of section 107 provides that oil and gas leases and incorporeal hereditaments or *profits à prendre* that are possessory interests must be placed on the secured roll, the second paragraph, directing that in case of delinquency "they shall be subject to seizure and sale in the same manner as provided for the seizure and sale of possessory interests in Sections 2914 to 2919, inclusive," is contradictory; that these interests cannot be treated as secured for one purpose and unsecured for another. At most, it is contended, the procedure is optional.

Looking, first, at the contention the procedure is optional, we note the requirement that such rights be seized and sold is not discretionary; it is mandatory. (*Lieb* v. *Day,*

130 Cal.App.2d 376, 378 [279 P.2d 53].) The section uses the language "shall be," not "may be."

██ Section 107 does provide an alternative method of collecting delinquent taxes assessed against an incorporeal hereditament or *profit à prendre,* whether created by lease or by reservation for a term of years, but the alternative is not between treating the interest as secured or unsecured; it is between seizing the interest and selling it or bringing suit against the assessee.

In support of their argument that the two paragraphs of section 107 are contradictory, appellants assert that to place a possessory interest on the secured roll for assessment purposes but to treat it as a possessory interest in the event of a delinquency defeats the purpose for putting such interest on the secured roll in the first place. ██ Appellants overlook that proceedings to assess taxes and proceedings to collect delinquent taxes are separable. ██ Although *Delaney* v. *Lowery, supra,* 25 Cal.2d 561, is primarily concerned with the constitutionality of section 107, the opinion makes it clear the reason for placing possessory interests in oil and gas, whether leases or incorporeal hereditaments and *profits à prendre* that are chattels real, on the secured roll is not to facilitate collection of unpaid taxes but to fix the tax at the rate for the current year and to permit payment in two installments. ██ The opinion makes it equally clear that it is constitutionally permissible to provide for the assessment of a possessory interest in oil and gas rights as secured property on the one hand, while on the other hand to provide for collection of delinquent taxes assessed against such rights by seizure and sale.

Appellants cite *Smart* v. *Peek,* 213 Cal. 452 [2 P.2d 380], for the proposition that oil and gas interests are to be treated for tax purposes as real property. The *Smart* case was decided before the enactment of Revenue and Taxation Code section 107, and its predecessors. The fact is, *Smart* v. *Peek* seems to have been a contributing cause for the enactment of section 107 since the opinion notes that the Revenue Act as it then existed "makes no exception of possessory interest defined by the act as real estate." Following that 1931 opinion, the Legislature, in 1939, enacted the forerunner to section 107, which legislation was amended in 1941, 1943 and 1957, to provide specifically that possessory interests in oil and gas are sufficient security for the payment of taxes, thus creating an exception which did not exist when *Smart* was decided.

Appellants assert that *Smart* v. *Peek, supra,* has been cited many times since the enactment of section 107 and its predecessors. However, we do not find that it has been cited by the Supreme Court as authority for the point at issue; in fact, we find no case interpreting this aspect of section 107.

In the face of the language of section 107, appellants nevertheless assert that public policy not only requires that a determinable interest in oil and gas rights when reserved, as here, be assessed in the same manner as a fee interest in real property, but that where there is a sale for delinquent taxes such an interest must be sold and deeded as a perpetual interest in oil and gas, freed from the express limitations of the reservation for ten years and so long as oil and gas are produced. Otherwise, they argue, no one would buy the interest at tax sale, and the state would lose the taxes.[2] The argument, if valid, would apply to oil and gas leases for a term of years and as long as oil and gas are produced. Yet *Delaney* v. *Lowery, supra,* 25 Cal.2d 561, determined that the interest conveyed by an oil lease for a term of years and as long thereafter as oil and gas may be produced must, under section 107, be placed on the secured roll for assessment purposes, but in case of delinquency seized and sold as a possessory interest as provided in sections 2914 to 2919, inclusive.

Since we conclude that a reservation of an interest in oil and gas for a term of years creates a possessory interest that is a chattel real and essentially the same as the interest conveyed by a lease for a term of years, the rationale of *Delaney* v. *Lowery, supra,* is applicable. Moreover, as pointed out earlier, section 107 does not leave the taxing entity without a remedy where a delinquency occurs near the end of the term, a circumstance that renders the sale of the assessee's interest unattractive to prospective buyers at a tax sale. In such a case the taxing agency need not resort to a sale of the depreciated determinable interest; section 107 provides an alternative remedy, namely, ''Suit may be brought against an assessee of such taxes in the event of delinquency in the payment thereof.''

 We conclude that appellants' purported deed from the State of California to an undivided one-half interest in the oil and gas rights in respondents' property is void by reason of the tax collector's failure to follow the provisions of

[2]This contention is also designed to circumvent the finding that no oil or gas was discovered or produced on the property during the 10-year period of the reservation of rights.

section 107 of the Revenue and Taxation Code. (*Lieb* v. *Day, supra,* 130 Cal.App.2d at p. 379.) Appellants' references to various statutes of limitation are irrelevant to a void sale. (*Nutting* v. *Herman Timber Co.,* 214 Cal.App.2d 650, 656 [29 Cal.Rptr. 754].)

Appellants filed a notice of appeal from an order denying motion to vacate judgment and enter a different judgment. Apparently this appeal was abandoned since it is not mentioned in the briefs, nor was it mentioned at oral argument.

The judgment and the order are affirmed..

Conley, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied May 15, 1968, and appellants' petition for a hearing by the Supreme Court was denied June 11, 1968.