[No. E018126. Fourth Dist., Div. Two. Sept. 2, 1997.]

CHARLES J. BARER, as Trustee, etc., Plaintiff and Appellant, v. COUNTY OF RIVERSIDE et al., Defendants and Respondents.

**COUNSEL**

Ward & Ward, Alexandra S. Ward, Hall & Bailey and John L. Bailey for Plaintiff and Appellant

William C. Katzenstein, County Counsel, Dorothy L. Honn and William D. Kenison, Deputy County Counsel, for Defendants and Respondents.

## OPINION

McDANIEL, J.*—The question presented here is whether ad valorem tax liens on a possessory interest in tax-exempt (Indian) land were eliminated by a nonjudicial foreclosure sale of the possessory interest by a senior lienholder. The trial court determined, and we agree, that the tax liens were not eliminated by the sale. Accordingly, we shall affirm the summary judgment entered in favor of the County of Riverside and the County of Riverside Tax Collector (collectively referred to as defendant) in an action for quiet title and declaratory relief brought by Charles J. Barer, as trustee for the Charles J. Barer Trust (plaintiff). Such action was brought by plaintiff as the owner of a condominium on land in Palm Springs managed by the Department of Indian Affairs (the property) which was the subject of the tax liens noted.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 7, 1989, the owners of the property (Leslie Kay Houston and others, hereinafter referred to as Houston) executed a deed of trust imposing a lien thereon (the deed of trust) in favor of First Fidelity Thrift and Loan Association (First Fidelity).

On March 1, 1991, the 1991-1992 real property tax was assessed against the property and placed on the secured roll. (Rev. & Tax. Code, §§ 2190.2, 109.)[1]

Sometime before December 10, 1991, when the first installment of the 1991-1992 real property taxes on the property became delinquent, Houston sold the property to Jack Hawkins (Hawkins).

On March 1, 1992, the 1992-1993 real property tax was assessed against the property and placed on the secured roll.

Sometime in March 1992, Hawkins filed a petition in bankruptcy court.

In June 1992, while Hawkins was still the record owner of the property, defendant recorded a certificate of lien against Hawkins for $5,238.72 in

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Section 2190.2 of the Revenue and Taxation Code provides in relevant part: "Every tax on an assessment of a possessory interest . . . shall become a lien on such possessory interest . . . ."

Section 109 of the Revenue and Taxation Code provides in relevant part: " 'Roll' means the entire assessment roll. The 'secured roll' is that part of the roll containing State assessed property and property the taxes on which are a lien on real property sufficient, in the opinion of the assessor, to secure payment of the taxes. The remainder of the roll is the 'unsecured roll.' . . ."

Unless otherwise noted, all statutory references are to the Revenue and Taxation Code.

unpaid taxes for the 1991-1992, plus a penalty and costs. The certificate of lien provided, upon its recordation, that the amount owing constituted a lien upon "all personal property and real property now owned or subsequently acquired by [Hawkins] before the date on which this lien expires."

On or about July 1, 1992, after the first and second installments of the 1991-1992 taxes had become delinquent, the *taxes* were transferred to the unsecured roll for collection. (§ 107.)[2] The assessment and the tax lien on the property, however, remained on the secured roll.

On June 11, 1993, while Hawkins was still the record owner of the property, defendant recorded a second certificate of lien against him for $5,251.36 in unpaid taxes for the fiscal year 1992-1993, plus a penalty and costs.

Thereafter, the delinquent taxes for 1992-1993 (but not the assessment) were transferred to the unsecured roll.

Shortly afterwards, Paula Heatley (Heatley), a field investigative officer for defendant, in an effort to locate the holder of the first trust deed on the property, requested a title report thereon from Gateway Title.

On June 21, 1993, Heatley received a title report from Gateway Title indicating that First Fidelity held the first trust deed on the property.

On the following day, June 22, 1993, Heatley informed First Fidelity of the delinquent taxes on the property for 1991-1992 and 1992-1993 (the delinquent taxes).

---

[2]At the time of the transfer, section 107 provided in relevant part: " 'Possessory interests' means the following: [¶] (a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person. [¶] (b) Taxable improvements on tax-exempt land. [¶] Any possessory interest may, in the discretion of the county board of supervisors, be considered as sufficient security for the payment of any taxes levied thereon and may be placed on the secured roll. [¶] Leasehold estates for the production of gas, petroleum and other hydrocarbon substances . . . are sufficient security for the taxes levied thereon. These estates and rights shall not be classified as possessory interests, but shall be placed on the secured roll. If the tax on any possessory interest or leasehold estate for the production of gas, petroleum and other hydrocarbon substances is unpaid when any installment of secured taxes becomes delinquent, the tax collector *may use those collection procedures which are available for collection of assessments on the unsecured roll.* [¶] If the tax on any possessory interest or leasehold estate for the production of gas, petroleum and other hydrocarbon substances remains unpaid at the time set for the declaration of default for taxes carried on the secured roll, the possessory interest tax together with any penalty and costs which may be accrued thereon while on the secured roll *shall be transferred to the unsecured roll.*" (Italics added.)

On October 21, 1993, Heatley contacted First Fidelity in regard to payment of the delinquent taxes. First Fidelity told Heatley that it would pay the delinquent taxes after the conclusion of the foreclosure proceedings it had commenced pursuant to the power of sale in its deed of trust.

On May 19, 1994, First Fidelity purchased the property at a nonjudicial foreclosure pursuant to the power of sale above noted. However, contrary to its representation to Heatley, First Fidelity did *not* pay the delinquent taxes after the sale.

On September 7, 1994, plaintiff obtained a first amended preliminary title report on the property from Chicago Title Company (Chicago Title). The report did not disclose that there were delinquent taxes, constituting a lien against the property. According to a declaration of a title officer employed by Chicago Title, such taxes had later been discovered in a review of "the general index and secured tax rolls," but had not been included in the report because the title company believed (mistakenly) that the liens had been eliminated by the foreclosure sale.

On September 15, 1994, First Fidelity sold the property to plaintiff.

On April 10, 1995, Heatley made a field call to the property to see if it were occupied. As she was preparing to leave a note on the door, plaintiff opened the door. Heatley informed plaintiff of the delinquent taxes. Plaintiff said he would ask his wife to contact Chicago Title in order to find out why the taxes had not been paid.

On the same day, April 10, 1995, defendant sent plaintiff a notice and demand for payment of $16,083.72 in delinquent taxes. The notice stated, if the $16,083.72 were not paid by April 17, 1995, that collection "must be enforced by . . . [¶] Seizure/sale of all property to satisfy tax."

On April 14, 1995, plaintiff filed the current action against defendant for: (1) declaratory relief, (2) quiet title, and (3) an injunction to restrain defendant from seizing the property. In allegations incorporated in all counts of the complaint, plaintiff set forth that: (1) the real property which was the subject matter of the complaint was a subleasehold estate on land managed and/or controlled by the Department of Indian Affairs; (2) the certificates of lien recorded against Hawkins were tax liens; (3) when he (plaintiff) purchased the property he did not have any knowledge or notice of the certificates of lien "or of any other tax liens against the subject property"; (4) when he

purchased the property the "tax liens" against Hawkins were " 'wiped out' and/or 'eliminated' " by First Fidelity's foreclosure sale; (5) if he had known or suspected that such tax liens were outstanding liens against the property he would not have paid First Fidelity $375,000 for the property; (6) such tax liens were junior in priority to the lien created by the deed of trust; (7) when he purchased the property, such purported tax liens were not shown on the secured rolls where real property taxes were shown and therefore he was a bona fide purchaser for value and his interest in the property was senior to defendant's claimed interest therein, and (8) defendant was barred and estopped from enforcing the obligations underlying such tax liens because defendant "consented to the removal of the tax liens from the secured rolls and instead recorded the certificates of lien" and "acquiesced in the fact that said taxes were no longer on the secured rolls for property taxes."

Defendant answered the complaint, and alleged 10 affirmative defenses. Among such defenses were that: (1) ad valorem property taxes had priority over all other liens on real property, regardless of the time of their creation (§ 2192.1),[3] and (2) it (defendant) was entitled to seize and sell the property. (§ 2951.)[4]

Thereafter, plaintiff and defendant each moved for summary judgment. Plaintiff's separate statement of undisputed material facts in support of his motion included the following: "10. . . . [T]he delinquent possessory interest ta[x]es for the property were transferred to the unsecured roll for collection, in accordance with Revenue & Taxation Code, sec. [1]07. . . . [¶] . . . 16. The recorded certificates of lien . . . for 1991-92 and 1992-93 taxes apply to and are enforceable against the assessee named in each certificate. In this case, the assessee is John J. Hawkins, not BARER. [Emphasis in original.] . . . [¶] 17. The delinquent taxes the COUNTY is attempting to enforce were not shown on the secured tax roll for the property in Sept. 1994, and are what is commonly known as 'secret liens' against the

---

[3]Section 2192.1 provides: "Every tax declared in this chapter to be a lien on real property, and every public improvement assessment declared by law to be a lien on real property, *have priority over all other liens on the property, regardless of the time of their creation.* Any tax or assessment described in the preceding sentence shall be given priority over matters including, but not limited to, any recognizance, deed, judgment, debt, obligation, or responsibility with respect to which the subject real property may become charged or liable." (Italics added.)

[4]Section 2951 provides: "Taxes due on unsecured property may be collected by seizure and sale of any of the following property belonging or assessed to the assessee: [¶] (a) Personal property. [¶] (b) Improvements. [¶] (c) Possessory interests."

Unsecured property is property which is assessed on the unsecured roll. (§ 134; *T.M. Cobb Co.* v. *County of Los Angeles* (1976) 16 Cal.3d 606, 623, fn. 13 [128 Cal.Rptr. 655, 547 P.2d 431] (*Cobb*).)

subject property.[5] . . . [¶] . . . 19. The delinquent taxes the COUNTY is attempting to enforce against BARER were not on the secured tax roll for the subject property at the time BARER purchased the subject property on or about Sept. 29, 1994. . . . [¶] 20. The COUNTY's extended secured rolls . . . are manufactured documents and are not true or accurate representations of the secured tax roll for the subject property. . . . [¶] . . . 34. [Chicago Title's] preliminary report showed all the predecessor's interests and taxes assessed by Defendants as of 9/7/94 were current and/or already paid. . . . [¶] 35. Delinquent taxes under the certificates of lien . . . were not shown in the preliminary report because they were eliminated/'wiped out' by the foreclosure sale under the First Fidelity deed of trust. . . . [¶] 36. John Hawkins is the assessee for the 1991-92, 92-93 taxes which the COUNTY is attempting to enforce against BARER. . . . [¶] . . . 38. Prior to BARER accepting the assignment [of First Fidelity's interest in the property], he had no knowledge or notice of the existence of the tax liens against the subject property."

Defendant disputed all of the foregoing facts except Nos. 10 and 16.

Defendant's separate statement of material facts filed in support of its motion included the following: "2. The subject property is real property, a possessory interest, located on tax-exempt land. . . . [¶] 3. The Riverside County Assessor assessed the subject real property on the secured roll in 1991 and 1992. . . . [¶] 4. The real property taxes on the subject property are secured by the subject property. . . . [¶] 5. The real property taxes on the subject property attach to the property by operation of law. . . . [¶] . . . 8. The 1991 and 1992 real property tax liens and assessments on the secured roll have, at all times, remained on the secured roll. . . . [¶] 9. The secured assessments on the subject property were delivered to the Riverside County Auditor each tax year including 1991 and 1992. . . . [¶] 10. The Auditor extended the secured assessment each year to determine the amount of the real property tax on the subject property. . . . [¶] 11. After the Auditor extended the secured roll for each tax year, including 1991-92 and 1992-93, the rolls were delivered to the Tax Collector to prepare the real property tax bills. . . . [¶] 12. Both the 1991 and 1992 secured real property taxes on the subject property remained unpaid at the time set for declaration of default for taxes carried on the secured roll. . . . [¶] 13. Delinquent taxes on the

---

[5] In support of his "fact" that the taxes were "secret liens," plaintiff cited *Cobb* at page 625. At the cited page, the court described a "secret lien" as a lien on improvements which is not noted "on the secured roll where the land upon which the improvements are located is listed." (*Cobb, supra*, 16 Cal.3d 606, 625.) Here, however, as opposed to *Cobb*, the land on which plaintiff's property is located *cannot* be listed on the secured roll *because it is tax-exempt land*. Accordingly, the term "secret lien," as used in *Cobb*, has no relevance whatsoever to the case here.

subject real property are required to be collected by the collection procedures utilized for the collection of taxes assessed on the unsecured roll. . . . [¶] . . . 19. First Fidelity's foreclosure on the subject property did not wipe out or eliminate the secured tax liens on the subject property. . . . [¶] 20. The tax liens have priority over all other liens regardless of the time of it's [*sic*] creation."

Plaintiff disputed all the foregoing facts except Nos. 2, 3, 9, 10, and 11.

Before the hearing on the motions for summary judgment, plaintiff remitted to defendant $17,352.54 in payment of the delinquent taxes, plus interest.[6]

After hearing the motions, the trial court entered an order: (1) denying plaintiff's motion for summary judgment, (2) granting defendant's motion for summary judgment, and (3) entering judgment in favor of defendant. The order included the following "Conclusions of Law": "50. That pursuant to Revenue and Taxation Code Section 107, the COUNTY was forced to transfer the 1991-92 and 1992-93 secured delinquent taxes to the unsecured roll for collection. . . . BARER had an obligation to search the prior years' secured and unsecured rolls to determine what, if any, delinquent taxes were due against the subject property. [¶] . . . 52. The tax liens have priority over all other liens regardless of the time of their creation. [¶] . . . 54. Where a delinquency exists, by a prior owner of the leasehold interest or the lessee, insofar as payments on a mortgage or anything that might cause the property to be put into foreclosure, and there is a non-payment of taxes, resulting in the taxes being placed on the unsecured tax rolls for the year, it is the duty of the buyer or purchaser out of foreclosure to investigate at least to the time that the initial delinquency occurred. . . . [¶] . . . 57. That although BARER did not have actual notice of the delinquent taxes at the time he (BARER)

---

[6]The payment took place before the court, in response to the statement by defendant's counsel that defendant would seize the property if the payment were not made. Counsel also pointed out that the "appropriate way to handle the matter" was to pay the taxes and file a claim for refund. (§ 5142.)

At the hearing three weeks later on the motions for summary judgment, counsel for defendant stated that defendant would waive its claim (which it had alleged as an affirmative defense) that plaintiff had failed to exhaust his administrative remedies and would not raise such claim as an issue on appeal.

Section 5142, subdivision (a) provides, with an exception not relevant here, that "[n]o action shall be commenced or maintained under this article [actions by taxpayers against the city or county for tax refund] unless a claim for refund has first been filed." Although the administrative remedy of the claim procedure is a jurisdictional prerequisite which cannot be "waived," a failure to pursue an administrative remedy is not " 'an absolute impediment to resort to the judicial process . . . where, [as here] it would be futile to pursue such remedy. [Citation.]' " (*Yamaha Motor Corp.* v. *Superior Court* (1986) 185 Cal.App.3d 1232, 1241 [230 Cal.Rptr. 382].)

purchased the subject property, he (BARER) was on constructive notice of the delinquencies based upon his obligation to conduct such a search of the secured and unsecured rolls."

The final judgment recited in relevant part: "60. That although the delinquent taxes did not show on the current secured roll for 1994 when BARER purchased the property, it was BARER's obligation as a matter of law to search prior years' secured and unsecured rolls for real property tax delinquencies. BARER failed to conduct such a search and, therefore, he (BARER) takes the property subject to the 1991-92 and 1992-93 tax liens. [¶] 61. That the case of *T.M. Cobb* v. *County of Los Angeles* (1976) 16 Cal.3d 606 . . . does not apply to the facts of this case, specifically, real property possessory interest taxes on tax-exempt land assessed on the secured roll. [¶] 62. That as a matter of law, the non-judicial foreclosure sale conducted under the First Fidelity Deed of Trust did not eliminate or wipe out the 1991-92 and 1992-93 delinquent real property tax liens on the subject property. [¶] . . . 64. Plaintiff BARER is not entitled to a return and/or refund of the $17,352.54 paid on December 15, 1995, to Defendants [*sic*] for the delinquent taxes."

This appeal followed.

### DISCUSSION

In pursuing his appeal, plaintiff contends principally that the delinquent taxes were liens which were junior or subordinate to the lien established by First Fidelity's deed of trust and therefore were eliminated as a result of the foreclosure sale by which it undertook to enforce its prior lien. Plaintiff also contends that the taxes can be collected only from Hawkins or from his interest in the property and cannot be collected from him (plaintiff) or from his interest in the property, and that he (plaintiff) should not be obligated to search the unsecured rolls or the previous secured rolls for the existence of delinquent possessory interest taxes.

I

*The Tax Liens Were Not Eliminated by the Foreclosure Sale*

As we have noted (fn. 3, *ante*), section 2192.1 provides that "[e]very tax declared in this chapter to be a lien on real property . . . ha[s] priority over all other liens on the property, *regardless of the time of their creation.*" (Italics added.)

Plaintiff offers three reasons why section 2192.1 does not apply to the taxes here. First, plaintiff contends that "possessory interest taxes can never become a lien on *the fee interest* in real property owned by Indians and, therefore, can never be a 'lien on real property.'" (Italics added.)

However, plaintiff improperly assumes that a fee interest is the only type of interest which can be a real property interest. Section 104 provides otherwise: "'[R]eal property' includes: [¶] (a) The possession of, claim to, ownership of, or right to the possession of land."

Moreover, if plaintiff is contending that his possessory interest here is not real property, such contention is contradicted by several of his express or implied assertions to the contrary in the record. For example: (1) paragraph 6 of plaintiff's complaint recites in relevant part that "The *real property* which is the subject matter of this Complaint is a subleasehold estate upon land managed and/or controlled by the Bureau of Indian Affairs . . . ." (Italics added.) (2) Plaintiff's undisputed fact No. 4 in support of his motion for summary judgment recites: "The *real property* which is the subject matter of this action is a subleasehold estate more commonly known as 38086 West Maracaibo Circle, Palm Springs, Riverside County, California." (Italics added.) (3) Plaintiff did not dispute defendant's fact No. 2 in support of its motion for summary judgment, that "[t]he subject property is *real property*, a possessory interest located on tax-exempt land." (Italics added.)

In sum, plaintiff's contention that possessory interest taxes can never be a "lien on real property" pursuant to section 2192.1 is without merit.

Plaintiff contends next that section 2192.1 does not apply here because a possessory interest tax is not a "tax declared in this chapter to be a lien on real property" pursuant to section 2192.1. Plaintiff acknowledges that section 2187 provides that "[e]very tax on real property is a lien against the property assessed." However, plaintiff argues that the "only reasonable interpretation" of section 2187 is that every tax on an interest in real property is a lien against that interest but is not a "lien on real property."

Suffice it to say that in *Cobb*, which plaintiff claimed, in his opposition to defendant's motion for summary judgment, was "the leading case in this area of the law," the Supreme Court stated that section 2192.1 applied to fixtures (but not to the fixtures in its case) because "[f]ixtures are . . . real property as that term is used in [section 104 of] the Revenue and Taxation Code." (*Cobb, supra,* 16 Cal.3d 606, 623-624.) Accordingly, because, as we have noted, a possessory interest is real property as that term is used in section 104, section 2192.1 applies to a possessory interest.

Finally, plaintiff contends, even if section 2192.1 applies to the tax liens here, that *Cobb* shows "clear[ly]" that such liens did not have priority over First Fidelity's deed of trust. However, as the trial court stated in its judgment, *Cobb* "does not apply to the facts of this case, specifically, real property possessory interest taxes on tax-exempt land assessed on the secured roll." We turn to that case.

In *Cobb*, the plaintiff (Cobb) purchased personal property and fixtures (the property) at a private sale in the City of South El Monte (the city) conducted by National Acceptance Company of California (National), the holder of a security interest in the property. The day before the sale, the Los Angeles County Tax Collector (the county) *seized the property* because the taxes on the property, *which property the county assessor had placed on the unsecured roll*, had become delinquent. Two days after the sale, Cobb, under protest, paid the taxes, penalties, and collection fees on the property and obtained a release thereof. (*Cobb, supra*, 16 Cal.3d 606, 611, 616.) After his claim for refund of the amounts paid was denied, Cobb brought an action against the county and the city (the defendants). The defendants obtained a summary judgment and Cobb appealed, contending, as relevant here, that National's "perfected security interest had priority over any interest asserted by the tax collector and therefore upon foreclosure and sale to plaintiff any interest of the tax collector was extinguished." (*Id.* at p. 612.)

In a unanimous opinion, the Supreme Court agreed with Cobb and reversed the judgment. In discussing the priority of National's security interest as to the fixtures, the court reasoned in relevant part that: (1) under section 104, fixtures (like the possessory interest here) are real property (*Cobb, supra*, 16 Cal.3d 606, 623-624); (2) under sections 2187 and 2192.1, tax liens on the fixtures have priority over all other liens on the fixtures (16 Cal.3d at p. 624); (3) the placing of the fixtures on the unsecured roll did not extinguish the lien created by section 2187 (16 Cal.3d at p. 628) but did extinguish the priority of the lien under section 2192.1 (16 Cal.4th at pp. 629-630, fn. 23.); and therefore (4) such placement precluded the tax collector from enforcing the lien by means of a seizure and sale under former section 2914 (now section 2951) (16 Cal.3d at p. 628).

The court reasoned, if the placing of the fixtures on the unsecured roll did not extinguish the absolute priority of the tax lien, then, under the seizure and sale provisions of section 2914, which, with "certain exceptions not pertinent to [its] case" (*Cobb, supra*, 16 Cal.3d 606, 623, fn. 12, citing § 107) were not available to the collection of taxes on property placed on the secured roll, the tax collector "could proceed to destroy any previous liens . . . before the lienholder had any notice of the seizure and sale, and before

the lienholder was even aware that the taxes were delinquent." (*Cobb, supra,* at p. 629.)[7]

The court added: "We cannot believe that the Legislature intended such a harsh result . . . . [¶] We conclude that . . . when seizing and selling property pursuant to section 2914 the tax collector may not enforce the lien created by section 2187. That lien exists and will continue to exist for 30 years (§ 2195), but *when the assessor has placed the property on the unsecured roll,* he does not have the power to enforce it by seizure and sale under section 2914. We conclude that the tax collector's claim has no priority over the security interest of National in respect to the fixtures." (*Cobb, supra,* 16 Cal.3d 606, 628-629, italics added, fn. omitted.)[8]

As the trial court recognized here, *Cobb* does not apply to this case because the real property here, unlike the real property in *Cobb,* is property which was assessed on the *secured* roll whose *delinquent* taxes can be collected by the procedures "available for collection of assessments on the *unsecured* roll." (§ 107, italics added.)

We have italicized "delinquent" because the reason the *Cobb* court refused to make the seizure and sale procedures available to the fixtures in its case was that the tax collector, under the predelinquent seizure procedure in section 2953, could destroy a previous lien *"before the lienholder was even aware that the taxes were delinquent."* (*Cobb, supra,* 16 Cal.3d 606, 629, italics added.)

However, section 2953 is not available to a seizure and sale of a possessory interest under section 107, because the statute does not allow the tax

---

[7]The court's statement that the tax collector could "destroy any previous liens . . . before the lienholder was even aware that the taxes were delinquent" was based on section 2953, which the court had quoted in its previous statement. Section 2953 provides: "Property shall not be seized or sold in satisfaction of taxes on unsecured property until after the date such taxes become delinquent, unless the tax collector first determines that seizure prior to that date is necessary because there is a great probability that the taxes will not be collectible after the delinquency date due to the financial condition of the taxpayer or other suitable reason, and prior to the seizure files a written declaration under penalty of perjury with the clerk of the board of supervisors setting forth the grounds and necessity for such seizure. [¶] The tax collector shall deliver a copy of the declaration to the assessee at the time of seizure."

[8]Plaintiff contends that the *Cobb* court held that "the tax collector *cannot* enforce any lien which might exist under Section 2192.1 *once the delinquent taxes are transferred to the unsecured roll.*" (Italics on "cannot" in original; other italics added.) It did not. The court held that the tax collector cannot enforce such a lien "when the assessor has *placed the property on the unsecured roll*" (*Cobb, supra,* 16 Cal.3d 606, 629, italics added), which is quite a different matter.

Plaintiff also contends that the *Cobb* court "determined that the very tactics employed by the COUNTY in this case are . . . illegal and erroneous." Again, it did not.

collector to use the procedure *until after the delinquency date.*[9] Accordingly, because the "harsh result" in *Cobb* (*Cobb, supra,* 16 Cal.3d 606, 629) could not take place in a seizure and sale under section 107, and, in any event, did not take place in regard to the allegedly contemplated seizure and sale here, *where the record shows that First Fidelity was aware of the delinquencies and promised to cure them,* the *Cobb* court's holding, that the tax lien was subject to the priority of National's security interest, does not govern disposition of the appeal here.

Because, to repeat once again, this case is governed by the collection procedures authorized by section 107 and the *Cobb* court stated expressly that such procedures were "not pertinent" to its case (*Cobb, supra,* 16 Cal.3d 606, 623, fn. 12), we turn to cases where such procedures are pertinent.

One such case is *Picchi* v. *Montgomery* (1968) 261 Cal.App.2d 246 [67 Cal.Rptr. 880], where the appellants contended that section 107 was inherently contradictory because "to place a possessory interest [in oil and gas] on the secured roll for assessment purposes but to treat it as [if it were placed on the unsecured roll] in the event of a delinquency defeats the purpose for putting such interest on the secured roll in the first place." (*Id.* at p. 253.)

The court disagreed, reasoning that "[a]ppellants overlook that proceedings to assess taxes and proceedings to collect delinquent taxes are separable. . . . [T]he reason for placing possessory interests in oil and gas . . . on the secured roll is not to facilitate collection of unpaid taxes but to fix the tax at the rate for the current year and to permit payment in two installments. . . . [I]t is constitutionally permissible to provide for the assessment of a possessory interest in oil and gas rights as secured property on the one hand, while on the other hand to provide for collection of delinquent taxes assessed against such rights by seizure and sale."[10] (*Picchi* v. *Montgomery, supra,* 261 Cal.App.2d 246, 253, citing *Delaney* v. *Lowery* (1944) 25 Cal.2d 561 [154 P.2d 674]; see also this court's decision in *Palm Springs Spa, Inc.* v. *County of Riverside* (1971) 18 Cal.App.3d 372 [95 Cal.Rptr. 879]: "The

_____

[9]Plaintiff contends that defendant did not comply with the requirement of section 2953 (see fn. 7, *ante*) that it deliver a declaration to him setting forth the grounds and necessity for a predelinquent seizure. However, because no seizure of any kind occurred here, much less a predelinquent seizure, such delivery (and declaration) were unnecessary.

[10]The "seizure and sale" referred to in *Picchi* was a provision in the then current version of section 107 which provided: "In the event of delinquency in the payment of any installment of taxes on such [oil and gas] rights, they shall be subject to seizure and sale in the same manner as provided for the seizure and sale of possessory interests in Sections 2914 to 2919, inclusive . . . ." The foregoing provision was deleted in 1979, and was replaced by the current provisions which allow the tax collector to "use the collection procedures which are available for the collection of assessments on the unsecured roll" and mandate the transfer of unpaid taxes from the secured to the unsecured roll.

enforcement of the possessory interest tax [under section 107] is limited to *seizure and sale of the possessory interest itself* [citation], a suit for collection of the assessment against the leaseholder only [citation] or statutory summary judgment, again against the lessee only [citation]" (*Id.* at p. 376, italics added).)

So it is in the case here. Although section 107 no longer provides that collection of delinquent taxes "shall" be subject to seizure and sale, it does not provide that collection of delinquent taxes shall *not* be subject to seizure and sale. "Generally the Legislature is supreme in the field of taxation . . . . [Citations.] Its power in the field of taxation is limited only by constitutional restrictions." (*Delaney* v. *Lowery, supra,* 25 Cal.2d 561, 568.) Plaintiff does not contend that the collection procedures provided in section 107 are unconstitutional; he contends only (and without justification) that such procedures do not apply here because, under *Cobb,* the delinquent taxes were extinguished by the foreclosure sale. In such contention, plaintiff is wrong.

As plaintiff acknowledges (without, however, applying the proposition to the case here), "[t]he purpose of Revenue and Taxation Code section 107 is to protect the public domain from private profit without tax liability." (*United Air Lines, Inc.* v. *County of San Diego* (1991) 1 Cal.App.4th 418, 427 [2 Cal.Rptr.2d 212].) If we accepted plaintiff's contention that the tax liens did not have priority over First Fidelity's deed of trust and therefore were "wiped out" in the foreclosure sale, then First Fidelity would indeed profit at the expense of the public domain by escaping tax liability *after acknowledging such liability.*

As the trial court reasoned here, "[P]urchasers [such as plaintiff] . . . from lenders [such as First Federal] . . . should not be able to have a windfall, as the lender should not be able to have a windfall, at the taxpayers' expense." We agree.

Based on the foregoing analysis, we hold that plaintiff's contention that the tax liens were eliminated by the foreclosure sale is without merit.

## II

### *Plaintiff's Remaining Contentions Are Also Without Merit*

Contrary to his previous contention that the delinquent taxes cannot be collected from his interest in the property because the lien arising therefrom was junior to First Fidelity's lien, plaintiff also contends that the delinquent taxes can *never* be collected from his interest in the property. In other words,

as we understand such contention, it is that, regardless of the priority of the lien arising therefrom, such taxes can be collected only from the interest of the assessee, i.e., Hawkins. (" 'Assessee' means the person to whom property or a tax is assessed." [§ 23.])

In support of such contention, plaintiff relies in part on section 2951, which, as noted (fn. 4, *ante*), permits the collection of taxes due on property assessed on the unsecured roll by seizure and sale of the possessory interest "belonging or assessed to the assessee." Plaintiff contends, because of the foregoing language, that the taxes here cannot be collected by seizing and selling his possessory interest, (apparently) because such interest no longer belongs *or is assessed to* the assessee (Hawkins).

However, although plaintiff's possessory interest no longer *belongs to* Hawkins, the taxes for 1991-1992 and 1992-1993 were *assessed against the interest* when it did belong to Hawkins, and such assessment, as plaintiff contends repeatedly in other contexts, remains in effect *against such interest.* Accordingly, plaintiff's contention that the taxes can never be collected from his possessory interest is without merit, if not illogical.

Plaintiff also contends that he, the taxpayer, should not be required to search the tax rolls for delinquent taxes (as the trial court concluded, *ante*) because it would be "extremely difficult for the general public and/or the title industry as a whole to do [so] with any accuracy." However, as to the general public, we agree with the trial court that "[t]here is no question [as to whether] the lender has the capacity to go back at the time of the foreclosure and determine if there were any unsecured taxes. And in most cases they [*sic*] are probably put on notice that there were secured taxes that went into the unsecured rolls because of the unique nature of Indian land."

Moreover, as to the lender here, namely First Fidelity, plaintiff's contention is irrelevant because defendant explicitly advised First Fidelity of the taxes on two separate occasions before it (First Fidelity) conducted its foreclosure sale, and First Fidelity promised to pay the taxes after the sale was over. In other words, First Fidelity *acknowledged that the taxes would not be eliminated in the sale.* In his reply brief, plaintiff contends that defendant should have seized and sold the property before the foreclosure sale and that he should not be penalized for defendant's "lack of diligence" in failing to do so.

However, in view of Heatley's sworn (and uncontradicted) statement that First Fidelity told her it would pay the taxes after the foreclosure sale, defendant's decision to rely on First Fidelity's statement rather than to spend

public funds on a seizure and sale was neither unreasonable nor a "lack of diligence." It amounted to reasonable reliance.

As for plaintiff's contention that it would be extremely difficult for the title industry to search the tax rolls for delinquent taxes, the record shows that Chicago Title actually did discover the taxes but did not include them in its preliminary report because it mistakenly concluded as a legal matter that the taxes were eliminated by the foreclosure sale.

A purchaser such as plaintiff "should be charged only with [constructive] notice of those [public records] which are locatable by a search of the proper indexes." (*Hochstein* v. *Romero* (1990) 219 Cal.App.3d 447, 452 [268 Cal.Rptr. 202].) In view of the declaration of the title officer employed by Chicago Title, that the taxes had been discovered in a review of "the general indexes and secured tax rolls," such taxes clearly were "locatable by a search of the proper indexes" (*ibid.*), and therefore plaintiff's contention that he should not be required to search such indexes is without merit.

Section 437c, subdivision (c) of the Code of Civil Procedure states that a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Plaintiff does not contend that any of the papers showed that there was a triable issue as to any material fact; he contends rather that he, and not defendant, was entitled to judgment as a matter of law. Based on the foregoing analysis, we hold that the trial court acted properly in denying plaintiff's and in granting defendant's motion for summary judgment.

DISPOSITION

The judgment is affirmed.

Ward, Acting P. J., and Gaut, J., concurred.

A petition for a rehearing was denied September 29, 1997, and appellant's petition for review by the Supreme Court was denied November 25, 1997.